UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MORGAN FORD, individually and on behalf
of all others similarly situated; ETHAN
DEECHER, individually and on behalf of all
others similarly situated; and GRADY HABICHT,
individually and on behalf of all others similarly
situated,

Plaintiffs,

     -v-                              1:20-CV-470

RENSSELAER POLYTECHNIC INSTITUTE,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ANASTOPOULO LAW FIRM<br>Attorneys for Plaintiffs<br>32 Ann Street<br>Charleston, South Carolina 29403 | ERIC POULIN, ESQ.<br>ROY T. WILLEY, IV, ESQ. |
| LYNN LAW FIRM, LLP<br>Attorneys for Plaintiff Ford<br>M&T Bank Building<br>101 South Salina Street, Suite 750<br>Syracuse, New York 13202 | KELSEY W. SHANNON, ESQ. |
| TOPTANI LAW PLLC<br>Attorneys for Plaintiff Ford<br>375 Pearl Street Suite 1410<br>New York, New York 10038 | EDWARD TOPTANI, ESQ. |
| MOREA SCHWARTZ BRADHAM FRIEDMAN<br>& BROWN LLP<br>Attorneys for Plaintiff Ford<br>444 Madison Avenue, 4th Floor<br>New York, New York 10022 | JOHN McLEOD BRADHAM, ESQ.<br>PETER BRYAN KATZMAN, ESQ. |
| DREYER BOYAJIAN LLP<br>Attorneys for Plaintiffs Deecher and Habicht<br>75 Columbia Street<br>Albany, New York 12210 | DONALD W. BOYAJIAN, ESQ.<br>JAMES R. PELUSO, JR., ESQ.<br>JOSHUA R. FRIEDMAN, ESQ. |

BOND SCHOENECK & KING, PLLC          JONATHAN B. FELLOWS, ESQ.
Attorneys for Defendant              SUZANNE M. MESSER, ESQ.
One Lincoln Center
Syracuse, New York 13202

PATTISON, SAMPSON LAW FIRM           MICHAEL E. GINSBERG, ESQ.
Attorneys for Defendant
P.O. Box 208
22 First Street
Troy, New York 12181

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I.    INTRODUCTION

It barely needs mentioning that the daily life of a vast majority of Americans—and indeed, human beings—before the COVID-19 pandemic seems foreign to the way we now must live in the middle of it.  Higher education has not been spared.  Countless students were sent home from colleges and universities mid-semester, including the students attending defendant Rensselaer Polytechnic Institute ("RPI" or "defendant").  Although their education continued remotely, to at least some of those students online learning was apparently less than they bargained for.

Now three of RPI's students, Morgan Ford ("Ford"), Ethan Deecher ("Deecher"), and Grady Habicht ("Habicht", together "plaintiffs") have sued defendant for breach of contract and other New York torts in the hopes of recovering in some measure the difference between the on-campus education they expected and the online schooling they received.  Defendant disputes plaintiffs' claims and to that end has moved for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c).  That motion, having been fully briefed, will now be decided on the parties' submissions and oral arguments.

2

## II.     BACKGROUND

Plaintiffs Ford, a New Jersey resident, Deecher, a Massachusetts resident, and Habicht, a Connecticut resident, are all undergraduate students currently enrolled at RPI. Dkt. 28 ("Compl."), ¶¶ 10-15.[1]   Plaintiffs allege that they were drawn to defendant in part because of "The Rensselaer Plan 2024" (the "Plan"), a framework of programs, some enacted, some yet hypothetical, designed to afford its students a unique educational experience.  *Id.* ¶¶ 28-29, 31.  The language of the Plan has a flavor of commitment, and most of its substantive clauses begin with the phrase "we will."  *See* Dkt. 28-1, *passim*.

Of particular relevance, RPI claims in the Plan that it "will . . . [o]ffer a complete student experience, highlighted by[ ] Clustered Learning, Advocacy, and Support for Students" ("CLASS").  Dkt. 28-1, p. 6.[2]  Defendant's CLASS program, which it has actively incorporated into student life, is designed to improve counseling, academic skill development, community building, and other purported benefits that "originate within the residential setting."  *Id.* at 12, *see* Compl. ¶ 41 (describing CLASS as an operational and ongoing program).  Defendant's catalog defines the CLASS program as "built around a time-based clustering and residential commons program."  Dkt. 29-1.  To help facilitate CLASS, defendant mandates that all first- and second-year students, as well as transfer students, live on campus.  Compl. ¶ 131.

In addition to the CLASS program, RPI has another program that it refers to as "The Arch."  Compl. ¶ 44.  The Arch requires all second-year students to live on-campus during the summer between their second and third years.  *Id.*  During that summer, the students take focused classes that are intended to afford more meaningful interaction with defendant's professors.  *Id.* ¶ 47.  After completing the Arch, third-year students typically spend their fall

---

[1] As is appropriate on a Rule 12(c) motion, the facts are taken from "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks and citations omitted).
[2] Pagination corresponds with CM/ECF.

3

semester away from campus in internships or other experiential learning environments to facilitate post-graduate employment opportunities.  *Id.* ¶ 49.

As is the case with so many areas of life, however, the COVID-19 pandemic drastically changed the way RPI's 2020 programs would proceed.  On March 10, 2020, due to concerns about the spread of the virus, defendant cancelled all university-sponsored events. Compl. ¶ 73.  On March 11, 2020, defendant required students to move out of on-campus housing.  *Id.* ¶ 75.  Although defendant eventually issued refunds for Spring 2020 room and board fees after having required its students to move out early, defendant reduced these reimbursements by the net of a reimbursed student's financial aid.  *Id.* ¶ 85.  Effective March 16, 2020, defendant moved all classes exclusively online.  *Id.* ¶ 74.  Nevertheless, rising third-year students were still required to complete the Arch online, even though it would no longer provide the in-person experience it originally intended.  *Id.* ¶ 80.

Plaintiffs allege that because RPI cancelled all activities and in-person instruction, they were deprived of the benefit of the on-campus education, activity fees, housing fees, and meal allowances for which they had paid in full before the semester began.  Compl. ¶¶ 77, 81-84.

On April 25, 2020, Ford filed the present class action complaint in this District.  Dkt. 1. Deecher and Habicht filed their own complaints on May 4, 2020.  On September 10, 2020, all three plaintiffs filed a consolidated amended complaint, the current operative pleading. Dkt. 28.  The amended complaint states eleven causes of action, eight of which state putative class allegations:  (I & II) breach of contract or in the alternative unjust enrichment on behalf of a class of those who paid tuition for students for the Spring 2020 or Arch 2020 semesters; (III & IV) breach of contract or in the alternative unjust enrichment for a class of those who paid fees for students for the Spring 2020 or Arch 2020 semesters; (V & VI) breach of

contract or in the alternative unjust enrichment for a class of those who paid for on-campus housing for students during the Spring 2020 semester; (VII & VIII) breach of contract or in the alternative unjust enrichment for a class of those who paid for students' meal plans for the Spring 2020 semester; (IX) conversion; (X) violation of N.Y. GEN. BUS. LAW §§ 349 ("§ 349") and 350 ("§ 350"); and (XI) promissory estoppel.  Compl. pp. 22-54.

On October 9, 2020, RPI answered the amended complaint.  Dkt. 29.  Four days later, on October 13, 2020, defendant filed the present motion for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c). Dkt. 30.  On December 3, 2020, the parties presented oral argument.  Text Minute Entry dated 12/3/2020.

## III.   **LEGAL STANDARD**

Rule 12(c) allows a party to move for judgment on the pleadings, so long as it does so early enough not to delay trial.  FED. R. CIV. P. 12(c).  In most material respects, the Rule 12(c) standard is the same as the familiar failure to state a claim standard under Rule 12(b)(6).  *See, e.g.*, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor."  *Ginsburg*, 839 F. Supp. 2d at 540.  The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7*

*Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380

F.3d 57, 67 (2d Cir. 2004)).

**IV.   DISCUSSION**

RPI has moved to dismiss plaintiffs' amended complaint in its entirety.  Defendant

argues five major points:  (1) plaintiffs have failed to allege a specific contractual promise

defendant breached to sustain their breach of contract claims; (2) plaintiffs' unjust enrichment

claims are duplicative of their breach of contract claims and fail to prove that justice requires

plaintiffs to be repaid; (3) plaintiffs' conversion claims are also duplicative and fail to identify a

property interest of which plaintiffs were deprived; (4) plaintiffs' General Business Law claims

fail to allege a deceptive practice; and (5) plaintiffs have not alleged that defendants

breached a clear and unambiguous promise.

**A.   Breach of Contract (Counts I, III, V, and VII).**

To survive a motion to dismiss, a breach of contract claim need only allege:  (1) the

existence of an agreement; (2) adequate performance of that agreement by the plaintiff;

(3) breach of the agreement by the defendant; and (4) resulting damages.  *Harsco Corp. v.

Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  Specific to universities, an implied contract "is

formed when a university accepts a student for enrollment[.]"  *Papelino v. Albany Coll. of

Pharmacy*, 633 F.3d 81, 93 (2d Cir. 2011).

That implied contract tasks a student with complying with the university's terms and

completing its required courses, and in return the student is awarded a degree.  *Papelino*,

633 F.3d at 93.  But also implicit in that contract is a requirement that the university "act in

good faith in its dealing with its students."  *Id.* (citing *Olsson v. Bd. of Higher Educ.*,

402 N.E.2d 1150, 1153 (N.Y. 1980)).

However, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014).  Instead, "only specific promises . . . in a school's bulletins, circulars[,] and handbooks, which are material to the student's relationship with the school," are enforceable." *Keefe v. N.Y. Law School*, 897 N.Y.S.2d 94, 95 (Sup. Ct. App. Div. 1st Dep't 2010).  In other words, "[g]eneral policy statements and broad and unspecified procedures and guidelines will not suffice." *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 175 (N.D.N.Y. 2020) (internal citations and quotation marks omitted).

RPI's arguments proceed across five vectors.  The first is that the contractual nature of a student's relationship to an educational institution is limited to only specific promises in the university's bulletins, circulars, and regulations.  To hear defendant tell it, plaintiffs have failed to point to any promise in such a document that defendant has broken.  Instead, the only promise defendant sees is a generalized agreement to pay for tuition, which it defines as payment for instruction.  By continuing to instruct its students, defendant argues that it has upheld its end of the bargain.

To that end, RPI relied in large part at oral argument on *Maas v. Cornell University*. 721 N.E.2d 966 (N.Y. 1999).  The *Maas* court affirmed a lower court's denial of judicial review of a contractual dispute between a school and a tenured professor.  *Id.* at 967.  In doing so, it noted that "[c]ourts retain a restricted role in dealing with and reviewing controversies involving colleges and universities" because educational institutions "are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence." *Id.* at 968-69.

*Maas*'s use is somewhat limited.  After all, there is precious little similarity between students asserting a breach of contract claim and a professor asking a court to take up a

judicial review of a school's administrative decision. *Maas*, 721 N.E.2d at 967.  Nevertheless, the Court of course acknowledges that its review of plaintiffs' contractual claims is circumscribed to enforcing specific promises.

RPI has repeatedly insisted that plaintiffs have identified no such promise.  But plaintiffs claim they have pointed at two.  Their first candidate, an implied promise for on-campus education based on the nature of defendant's dealings with the school, does not withstand scrutiny.  As defendant pointed out both on the papers and at oral argument, breach of contract actions between a student and a school must be grounded in a text, such as a school's bulletins, handbooks, catalogs, or circulars, or else courts should decline to involve themselves.  *See, e.g.*, *Keefe*, 897 N.Y.S.2d at 95; *Maas*, 721 N.E.2d at 968-69.  In light of existing precedent, such an esoteric contract claim cannot be sustained.

But plaintiffs' submissions do provide for one alternative source of a specific promise: RPI's CLASS program, which is described at length in defendant's circulars, including the Plan and catalog.  According to plaintiffs, defendant's publications describe a (mandatory) on-campus learning experience that is integral to attending its school.

Nevertheless, RPI argues that it is improper to rely on the Plan as a basis for a specific promise, because the Plan merely sets goals, not policy.  Plaintiffs dispute defendant's characterization of the Plan as aspirational ideas, because the Plan's tone is consistently declaratory, with several of its statements beginning with the phrase "we will."

RPI's arguments concerning the Plan must be rejected.  At the outset, whether the Plan could adequately provide a promise is largely beside the point.  Defendant's catalog describes the CLASS program in much the same terms as the Plan.  That document's claims that the CLASS program provides a "time-based clustering and residential commons program" touted as an "award-winning First-Year Experience" that "extends learning across

the spectrum of student residential life" fits the bill of a specific promise in any case, at least for the purposes of a Rule 12(c) motion.  Dkt. 29-1; *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (Sup. Ct. App. Div. 2d Dep't 1996) ("The rights and obligations of the parties, as contained in the university's bulletins and catalogs[,] became a part of the parties' contract . . . .").

But in any case, the Plan is similarly qualified to provide a specific promise to support plaintiff's claims at this stage.  At least for the purposes of a Rule 12(c) motion, the Plan qualifies as a circular, and thus would be eligible to present a specific promise to support plaintiff's claim.[3]

Even if the Plan is the right type of document to provide a promise, RPI argues that the Plan amounts only to aspirational goals and statements of policy, which it claims cannot support a specific promise.  In making that argument, defendant relies on cases striking down breach of contract claims based on anti-discrimination policies and declarations involving vague terms such as "fair and equal treatment."  *See, e.g.*, *Faiaz*, 64 F. Supp. 3d at 359-60 (rejecting as promise requirement that "standards of consistency and equity in disciplinary proceedings are maintained" (cleaned up)).

But generic statements like those are of an entirely different character than the specific programs the Plan formulates.  Although it may lay out some objectives defendant only hopes to achieve, RPI has implemented parts of the Plan—and especially the CLASS programs. *See* Compl. ¶ 41.  Yet despite defendant's enacting CLASS just as it claimed it would, plaintiffs were denied the opportunity to enjoy the supposed benefits of that program.  It is one thing for courts to refuse to open up an institution of higher learning to liability for any

---

[3] Curiously, when defendant at oral argument would frequently reference the materials that can provide the terms of the implied contracts between a student and a university, defendant omitted the word "circulars," despite it appearing repeatedly in New York case law.  *See, e.g.*, *Keefe*, 897 N.Y.S.2d at 95.

possible breach of its commitment to "fairness" in its administrative proceedings, but using

that line of reasoning to absolve a school of its liability for not providing a program that it

claimed in circulars that it "will" provide is another matter entirely.  *See Faiaz*, 64 F. Supp. 3d

at 359-60.

Even still, RPI points to two cases that it believes illustrate why plaintiffs' claims should

be dismissed.  The first is *Paynter v. New York University*, 319 N.Y.S.2d 893, 893-94 (Sup.

Ct. App. Div. 1st Dep't 1971), in which the court dismissed a breach of contract claim after the

defendant university completely shut classes down in response to civil unrest.  Plaintiffs

distinguish *Paynter* by noting that the court in that case only reversed a lower court's ruling

that canceling a few days of in-person classes to protect the safety of its students constituted

a breach of contract.  319 N.Y.S.2d at 984.  The Court agrees with plaintiff that there is a

world of difference between canceling some classes—in the absence of any affirmative

guarantee on the number of classes to be held—and not affording students services and

benefits for an extended period of time despite such a promise.  Accordingly, *Paynter* does

not control the outcome of this case.

RPI also points to *Chong v. Northeastern University*.  2020 WL 5847626

(D. Mass. Oct. 1, 2020).  In *Chong*, the District of Massachusetts dismissed a breach of

contract claim against a university for shuttering in-person classes during the COVID-19

pandemic.  *Id.* at *2-3.  Of particular importance to its decision, the plaintiffs in that case failed

to provide any promise more concrete than a document that amounted to an agreement to

pay tuition in exchange for classes.  *Id.* at *3.

However, it bears noting that the *Chong* court nevertheless allowed its plaintiffs' claims

alleging a breach of contract for not refunding those plaintiffs' activity fees to proceed.  2020

WL 5847626, at *4.  For their part, plaintiffs dispute *Chong* by arguing that their theory of

recovery is different from that of the plaintiffs in that case, because these plaintiffs have pointed to the Plan and the catalog as the source of specific promises of in-person instruction on defendant's part.  *See id.*

Plaintiffs are correct.   The document that purported to establish a specific promise in *Chong* only tied the payment of tuition to a student's ability to register for courses or receive other services, without so much as mentioning whether those classes would be in-person or what those services would be.  2020 WL 5847626, at *3.  This case, by contrast, involves precisely such a promise directed at affording an in-person program that defendant had previously put in place and implemented.  *See, e.g.*, Dkt. 29-1 p. 13 (describing and touting benefits of CLASS program).  Accordingly, *Chong* is distinguishable and of little weight.

Contrary to RPI's arguments, it made some bold claims—or, plausibly, promises— about its in-person programming and hammered repeatedly on the benefits of those programs in an assortment of circulars and even in its catalog.  As it stands, plaintiffs have thus adequately alleged, through both the catalog and the Plan, that defendant has released a publication expounding the virtues of its in-person programming that it ultimately did not provide.  Drawing all reasonable assumptions in plaintiffs' favor, those allegations are sufficient for the purposes of a Rule 12(c) motion and defendant's first line of argument must be rejected.  *See, e.g.*, *Salerno v. Fla. S. Coll.*, 2020 WL 5583522, at *4-5 (M.D. Fla. Sept. 16, 2020) (holding that breach of contract claim should survive Rule 12 motion because defendant college's publication implied that courses would be conducted in-person and touted the school's many resources and facilities).[4]

---

[4] *Salerno* relies on Florida law, not New York law, and thus its usefulness is of course blunted.  2020 WL 5583522, at *4-5.  Nevertheless, the two legal schemes appear to be nearly identical, at least insofar as both hinge on the school's publications providing the terms of an "implied in fact contract."  *See id.*

11

RPI's second line of argument is that "tuition" is defined as payment for instruction, which plaintiffs received.  Thus, any argument that plaintiffs make that would entitle them to a return of their tuition payments would by necessity challenge the quality of defendant's instruction and be an impermissible educational malpractice claim in disguise.  Because New York does not recognize educational malpractice, or claims alleging the school failed to provide an effective education, defendant claims this argument alone settles matters.  *See Papelino*, 633 F.3d at 93.

But RPI's arguments about the definition of tuition again miss the mark.  It may be that tuition is defined as "payment for instruction," but defendant can hardly deny that there is more to the contractual relationship than its argument would suggest.  Paying tuition inherently changes the applicant's status to student.  That status allows a student to access a number of resources she would be denied if she had not enrolled.  Access to the school's computers, laboratory equipment, library services, research tools, and more hinge entirely on whether a student has paid up.  In short, what a student expects to receive in exchange for tuition money covers much more territory than simply the right to take classes.

But setting the logical pitfalls of RPI's arguments aside, the legal consequences of adopting defendant's arguments are at least as problematic.  If a plaintiff may only recover tuition that she paid in circumstances in which the school breached a contract involving her instruction, then once a student pays her tuition the school need only provide some instruction to be able to keep the entire tuition figure.

So long as it teaches her anything at all, any other conceivable breach would fall into either of two categories.  On the one hand, a claim not concerning the instruction itself would—under RPI's reasoning—not entitle the plaintiff to recover tuition because tuition is only recoverable in instances of a denial of instruction.  On the other hand, if a claim did

contemplate a promise regarding the quality of her instruction, it would fall under the heading of educational malpractice and thus not be cognizable under New York law. *Papelino*, 633 F.3d at 93.

By necessary implication, if RPI's arguments as to the nature of tuition carry the day, a school could expressly promise anything it wished in terms of the nature of its instruction— even in its bulletins, circulars, and handbooks—never even attempt to provide those things, yet be perfectly insulated from a suit to recover any portion of tuition so long as it actually provided some education to its students. New York's deference to educational institutions cannot reach so far as to deny students any recourse for breaches of express promises. Otherwise, the cemented rule that a university can be bound by promises in its bulletins, handbooks, and circulars would be devoid of any avenue for a plaintiff to recover for a breach of one of those promises because the school would be entitled to keep plaintiff's tuition payments regardless of any breach. *Keefe*, 897 N.Y.S.2d at 95.

Accordingly, plaintiffs' claims seeking recompense from their tuition payments do not by necessity fall under the heading of educational malpractice, and if plaintiffs successfully prove out their claims of breach based on the Plan and the catalog, they will be able to recover from RPI a portion of the amount they paid in tuition.

Because plaintiffs do not automatically transgress New York's educational malpractice prohibition by the nature of their claims, it is worth noting further that plaintiffs' claims do not run afoul of the educational malpractice prohibition by merit, either. Plaintiffs do not argue that they were given inferior instruction. They similarly do not challenge the merits of RPI's decision to shift to remote learning, which is what New York's educational malpractice rule seeks to avoid. *Cf. Papelino*, 633 F.3d at 94 (noting in dismissing breach of contract claim as disguised educational malpractice claim that academic decisions should be "left to the sound

judgment of the professional educators").  All they argue is that regardless of fault, the value of the on-campus experience defendant plausibly promised them is greater than the value of the remote experience they received.  That can be true even if defendant made every choice reasonably, or even perfectly.

Which, unsurprisingly, is exactly what RPI claims that it did.  Its third line of argument cashes out to claiming that it had no choice but to shut down, and that it thus cannot be held accountable for the financial fallout of that decision, to whatever extent it had the discretion to decide.  Yet ultimately, it bears remembering that much as defendant would make of the fact that it was forced to shut down, that does not answer whether it or its students should bear the cost of that outcome.

When pressed on this point at oral argument, RPI was adamant that it did not profit from shutting down and that it felt losses just like its students did.  The Court does not doubt the veracity of this claim.  A pandemic is global by definition, and few if any have escaped hardship as a consequence.  For all that, the question remains:  in the event of an unforeseeable, faultless breach, who should bear the burden for the unfulfillment of a contract?

It therefore does not matter whether RPI could have continued to operate in-person classes.  It does not matter whether defendant's decisions were prudent or necessary.  What matters at this moment is that plaintiffs have plausibly alleged that defendant specifically promised in its circulars a bevy of in-person academic programs that it did not provide. Those allegations are enough to survive a motion for judgment on the pleadings.

Accordingly, because all of RPI's arguments against plaintiffs' Count I breach of contract claim by the purported tuition class have been rejected, defendant's motion for

judgment on the pleadings against Count I must be denied.[5]  *See, e.g.*, *Rosado v. Barry Univ. Inc.*, 2020 WL 6438684, at *3-4 (S.D. Fla. Oct. 30, 2020) (denying motion to dismiss because plaintiffs' complaint properly alleged that school, not students, should bear risk for cessation of in-person classes necessitated by COVID-19 pandemic).

Fourth, RPI argues that Count III should be dismissed because plaintiffs have not demonstrated a specific promise on defendant's part regarding the activity fees plaintiffs paid to it.  Plaintiffs counter that argument by pointing out that according to defendant's own catalog, the Activity Fee all students pay "carries with it Rensselaer Union membership privileges."  Dkt. 29-1, p. 68.  As for what those privileges entail, that same document points to "over 200 service, media, recreation, club sports, performing and visual arts, multicultural, and special interest student organizations."  *Id.* at 35.  Plaintiffs have alleged that they paid the full activity fees, yet after March they did not "have access to . . . facilities, activities, services, or other opportunities."  Compl. ¶¶ 62, 64-65.  Plaintiffs have thus plausibly alleged a breach of a specific promise.[6]  Accordingly, defendant's motion for judgment on the pleadings against Count III must also be denied.

Fifth and finally, RPI argues that it did, in fact, provide partial refunds to students to the extent that they paid for room and board and that by extension Counts V and VII must be dismissed.  Plaintiffs do not dispute that they received a partial refund, but they do argue that reducing refunds based on the amount of financial aid paid to students is unfair because the amount of aid is not responsive to whether a student signs up for a meal plan or lives

---

[5] Defendant also argued that plaintiffs waived their breach of contract claims for tuition beyond the spring 2020 semester by continuing to attend school, including the Arch program.  But whether continuing to enroll in the Arch and classes after the spring 2020 semester constituted a waiver of further damages or a mitigation of those damages in place of plaintiffs' only alternative of dropping out of school altogether until the end of the pandemic is a factual dispute unsuited to a Rule 12(c) motion.

[6] To the extent defendant argues that it kept operating the Student Union and Health Center even through the pandemic, plaintiffs have plausibly alleged that those services were at the least reduced below the threshold defendant promised in its catalog.  Compl. ¶¶ 62, 64-65.  Accordingly that argument is also unavailing.

on-campus.  Instead, plaintiffs argue students are paid financial aid in a flat amount based on their family's income regardless of whether they live on campus or purchase a meal plan.

Upon consideration, and for the purposes of a Rule 12(c) motion, the Court agrees with plaintiffs.  Because plaintiffs have plausibly alleged a promise of room and board in exchange for their payment of the associated fees, RPI is saddled with an ongoing duty of good faith and fair dealing in carrying out that promise.  *Papelino*, 633 F.3d at 93. Withholding repayment to plaintiffs for a service that they did not receive because of an entirely unrelated consideration could plausibly violate that duty, and thus plaintiffs' claims must survive for now.  In addition, the Court is concerned that defendant's policy in fact seems to directly target the students most in need of a refund.  Accordingly, defendant's motion for judgment on the pleadings against plaintiffs' Counts V and VII must also be denied.  Plaintiffs' breach of contract claims must proceed to discovery.

### B. Unjust Enrichment (Counts II, IV, VI, and VIII).

Proving an unjust enrichment claim under New York law requires a plaintiff to prove: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citations and quotation marks omitted). Unjust enrichment is a quasi-contractual theory of recovery that exists in the absence of an affirmative agreement.  *Id.* at 586-87 (citing *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005)).

By extension, the existence of an enforceable, written contract will typically preclude a recovery for a quasi-contractual claim, including for unjust enrichment, *EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp. 2d 861, 873-74 (S.D.N.Y. 2000).  In other words, an unjust enrichment claim is "not available where it simply duplicates, or replaces, a

conventional contract or tort claim." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).

However, if the subject-matter of an unjust enrichment claim "is not covered by a valid, enforceable contractual obligation," that claim is not duplicative and need not be dismissed based solely on the existence of a breach of contract claim. *See, e.g.*, *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010) (declining to dismiss unjust enrichment claim where contract did not cover subject of unjust enrichment claim).

RPI makes two arguments in favor of dismissing plaintiffs' unjust enrichment claims. First, it argues that these claims are duplicative of plaintiffs' breach of contract claims, because the implicit contract between students and universities governs plaintiffs' requests for relief. Plaintiffs counter this argument by pointing out that they are permitted to plead unjust enrichment in the alternative because defendant disputes that a contract covers their claims. Defendant would dispel plaintiffs' point by noting that it does not dispute the existence of a contractual relationship between the parties, only that there exists a specific promise entitling plaintiffs to the relief that they seek.

RPI's argument is clever, but mistaken. If defendant successfully proves that there is no valid, enforceable contractual provision that affords plaintiffs relief, then their unjust enrichment claim would be viable regardless of their erstwhile breach of contract claims. *Spirit Locker*, 696 F. Supp. 2d at 305. In particular, plaintiffs correctly note that if defendant successfully proves impossibility, the contract would become unenforceable, and their unjust enrichment arguments would return to fill the gap. *See H.Daya Int'l Co. v. Arazi*, 348 F. Supp. 3d 304, 312 n.6 (S.D.N.Y. 2018) (dismissing unjust enrichment claim as moot only

after defendants failed to prove impossibility of contract and were found liable for breach of contract).

RPI's second argument is a closer call.  Defendant argues that plaintiffs cannot contend that justice requires that they be reimbursed because the pandemic demanded the end of defendant's in-person programming.  Plaintiffs of course do not dispute that defendant needed to shut down.  Instead, they argue that it is unjust for defendant to keep their full tuition payments and to discount plaintiffs' refunds based on financial aid on a net basis.

Plaintiffs' framing of the issue of what justice requires is the better one.  Once again, RPI misses the mark by viewing plaintiffs' complaint as an attack on its decision to shut down. Plaintiffs do no such thing.  Instead, plaintiffs simply call defendant to task for keeping the money that plaintiffs paid expecting in-person instruction.  For the same reasons discussed regarding plaintiffs' breach of contract claims, defendant's alleged suggestions of the value of its in-person programming make the injustice of defendant keeping the portions of plaintiffs' tuition, fees, housing, and meals payments plausible.  Thus, plaintiffs' unjust enrichment claims under Counts II, IV, VI, and VIII must survive.  *See, e.g.*, *Salerno*, 2020 WL 5583522, at *5 (allowing unjust enrichment claim in alternative to breach of contract claim where defendant university needed to shut down for COVID but had implicitly promised in-person instruction).

### C. Conversion (Count IX).

New York law defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (N.Y. 1995)).  To prove that claim out, a plaintiff must allege:  "(1) the property subject to conversion is a specific identifiable thing;

(2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted).

However, conversion cannot enforce a simple obligation to pay money, *see Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases), unless the money is in the form of a "specific, identifiable fund" subject to "an obligation to return or otherwise treat in a particular manner[,]" *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (Sup. Ct. App. Div. 1st Dep't 1990). Additionally, "[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (footnote omitted).

RPI argues that plaintiffs fail to identify a property interest over which defendant improperly took dominion. Plaintiffs respond by arguing that the tuition and fees they paid defendant took the form of a specific fund that defendant could convert. But plaintiffs cannot realistically argue that once that money was paid to defendant it remained intact, as opposed to pooling in with defendant's other funding. Thus, plaintiffs have failed to allege that their tuition and fee payments still exist as a "specific, identifiable fund" that defendant could have converted. *Chem. Bank*, 559 N.Y.S.2d at 712. Defendant's motion for judgment on the pleadings must therefore be granted as to plaintiffs' Count IX claim for conversion.

### D. **New York General Business Law §§ 349 and 350 (Count X).**

To state a claim under §§ 349 or 350[7], a plaintiff must allege: "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the

---

[7] The only meaningful difference between §§ 349 and 350 is that § 350 deals specifically with false advertising practices. *Goshen v. Mutual Life Ins. Co.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). This is contrary to the Second Circuit's frequent imputation of a reliance element for § 350 claims, *Pelman v. McDonald's Corp.*, 396

allegedly deceptive act or practice."  *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012).  "Deceptive acts are defined objectively[ ] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (cleaned up and internal citation marks and quotations omitted).

RPI principally argues that plaintiffs have failed to plead a materially misleading practice on its part.  Plaintiffs counter that defendant advertises that it will have on-campus learning, and that those students reasonably expected on-campus learning to be available. Plaintiffs also argue that there is no specific intent requirement under either § 349 or § 350.

Plaintiffs' arguments, although establishing the difference between their expectations and reality, fail to demonstrate how defendant misled them as contemplated by the statute. Even assuming that plaintiffs' formulation of the law is correct and there is no specific intent requirement, plaintiffs have nevertheless failed to adequately allege that RPI committed a deceptive act.  No reasonable consumer would expect a university to remain open for in-class instruction in the face of a pandemic and a state-mandated shutdown, regardless of whether the school advertised on-campus learning as a strength.  *Boule*, 328 F.3d at 94. Accordingly, plaintiffs' arguments as to specific intent are irrelevant because they cannot plausibly allege that they meet the objective test required of them.  *Id.*  Plaintiffs' Count X claims under §§ 349 and 350 must therefore also be dismissed.

**E.  Promissory Estoppel (Count XI).**

A plaintiff may establish promissory estoppel through proving three elements:  (1) the defendant's "clear and unambiguous promise"; (2) upon which the plaintiff reasonably relied; (3) to her detriment.  *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019). Much like unjust enrichment, promissory estoppel is a quasi-contractual claim, which

---

F.3d 508, 511 (2d Cir. 2005), which the New York Court of Appeals has specifically identified as an error, *Koch*, 967 N.E.2d at 676.

"generally applies only in the absence of a valid and enforceable contract." *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011).

However, once again, most courts have held that where a defendant disputes the existence of a valid, enforceable contract, a plaintiff may plead promissory estoppel as an alternative theory of recovery. *See, e.g.*, *Personal Watercraft Prod. SARL v. Robinson*, 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (collecting cases permitting alternative pleading of promissory estoppel and unjust enrichment).

The arguments on this point effectively rehash the parties' earlier breach of contract arguments. RPI argues that plaintiffs do not provide a specific promise which they allege it breached outside of the Plan, which is only a list of goals and principles. Plaintiff argues that the Plan does provide specific promises and defendants should be held to them.

RPI has not provided any novel ground worthy of barring plaintiffs' promissory estoppel claim distinct from those that did not allow it to prevail in dismissing plaintiffs' breach of contract claims. The only new cases defendant cites in support of dismissing plaintiffs' promissory estoppel claim are *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 408 (W.D.N.Y. 2017), and *Prasad v. Cornell University*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016). But neither of those cases found a specific promise to support their plaintiffs' breach of contract claims. *Rolph*, 271 F. Supp. 3d at 408; *Prasad*, 2016 WL 3212079, at *22. This Court has found that plaintiff plausibly alleged those promises in the Plan and defendant's catalog. Accordingly, plaintiffs have plausibly alleged a specific promise, and their Count XI promissory estoppel claim must survive.[8]

---

[8] However, the possible viability of a promissory estoppel claim against a school is uncertain. Any specific promise contained in a school's bulletins, handbooks, or circulars would presumably become part of the terms of the implicit contract, and thus be properly cognizable as a breach of contract claim, closing the door on promissory estoppel. *Bader*, 773 F. Supp. 2d at 415. Perhaps an oral promise from a school official with the capacity to bind the school might qualify, but plaintiffs have not alleged any such promise. Under any circumstance, the proper time to consider that question is not during a Rule 12(c) motion.

## V.    <u>CONCLUSION</u>

The Court understands RPI's frustration.  Its shutdown was necessitated by acts of nature and government well beyond its control.  But though defendant may have been in an impossible position, plaintiffs did not ask for their lives to be disrupted on a mass scale either.  The purpose of this litigation is not to apportion blame.  It is only to ensure that the hardship imposed by the present state of the world falls justly.  To that end, plaintiffs' complaint must proceed to discovery, with the exception of their conversion and New York General Business Law claims under Counts IX and X, respectively.

Therefore, it is

ORDERED THAT

1.  Defendant Rensselaer Polytechnic Institute's Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART;

2.  Plaintiffs' Count IX conversion claim is DISMISSED;

3.  Plaintiffs' Count X claim under New York General Business Law §§ 349 and 350 is DISMISSED; and

4.  Defendant Rensselaer Polytechnic Institute's motion regarding plaintiffs' claims under Counts:  (I) breach of contract for the purported tuition class; (II) unjust enrichment for the purported tuition class; (III) breach of contract for the purported fees class; (IV) unjust enrichment for the purported fees class; (V) breach of contract for the purported housing class; (VI) unjust enrichment for the purported housing class; (VII) breach of contract for the purported meal plan class; (VIII) unjust enrichment for the purported meal plan class; and (XI) for promissory estoppel across all classes is DENIED and those claims may proceed to discovery.

IT IS SO ORDERED

Dated:  December 16, 2020
       Utica, New York.

David N. Hurd
U.S. District Judge