b**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

MORGAN FORD, et al.,

                                      Plaintiffs,

        v.

RENSSELAER POLYTECHNIC INSTITUTE,        No. 1:20-CV-470
                                             (DNH/CFH)

                                  Defendant.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                        **OF COUNSEL:**

Anastopoulo Law Firm                ERIC POULIN, ESQ.
32 Ann Street
Charleston, South Carolina 29403
Attorneys for plaintiffs

Lynn Law Firm, LLP                  KELSEY W. SHANNON, ESQ.
333 West Washington Street
Ste. 750
Syracuse, New York 13202
Attorneys for plaintiffs

Toptani Law PLLC                   EDWARD TOPTANI, ESQ.
375 Pearl Street, Ste. 1310
New York, New York 10038
Attorneys for plaintiffs

Morea Schwarts Bradham        JOHN MCLEOD BRADHAM, ESQ.
Friedman & Brown LLP
444 Madison Ave., 4th Floor
New York, New York 10022
Attorneys for plaintiff

Bond Schoeneck & King, PLLC    JONATHAN B. FELLOWS, ESQ.
One Lincoln Center
Syracuse, New York 13202
Attorneys for defendant

Pattison, Sampson Law Firm      MICHAEL E. GINSBERG, ESQ.

P.O. Box 208
22 First Street
Troy, New York 12181-0208
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

Presently pending before the Court are motions to compel filed by plaintiffs,

Morgan Ford, Ethan Deecher, and Grady Habicht ("plaintiffs"), pursuant to Northern

District of New York Local Rule 37.1,[1] seeking to (1) compel defendant Rensselaer

Polytechnic Institute ("RPI" or "defendant") to respond to plaintiffs' first set of

interrogatories, dkt. no. 57, and (2) compel defendant to produce documents, dkt. no.

60.  Defendant opposed both motions.  See Dkt. Nos. 62, 65.  Defendant also filed

supplemental responses "to certain of the Interrogatories" along with its opposition.  Dkt.

Nos. 62, 62-2.  Plaintiff replied to the motion to compel interrogatory responses.  See

Dkt. Nos. 63,[2] 64.  For the following reasons, plaintiffs' (1) motion to compel responses

to interrogatories, dkt. no. 57, is granted in part and denied in part; and (2) motion to

compel production of documents is granted in part and denied in part.

### I.  Motion to Compel Interrogatory Responses

#### A. Background

---

[1]  N.D.N.Y. Local Rule 37.1 sets forth the steps required before a party may make "any discovery motion pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure."

[2]  Docket number 63 is an attorney declaration in further support of their motion to compel limited to the issue of the fact that defendant "references certain documents in its supplemental responses to plaintiff's First Set of Interrogatories" and that the documents are "primarily designated 'Confidential' and the parties have agreed not to file such documents with the court pursuant to a pending protective order." See Dkt. No. 63. Should the Court "deem[] it necessary to review aid documents in determining the motion," plaintiffs request "leave to file the same under seal with the court." Id. at 1.  Plaintiffs' reply is at dkt. no. 64.

Plaintiffs served defendant with their first set of interrogatories on October 13, 2020, and defendant served its objections and responses on February 10, 2020.  See Dkt. No. 57-1 at 2.  Plaintiffs informed defendant "that the responses contained certain deficiencies and/or required supplemental responses."  Id.  Defendant responded.  Id.  Plaintiffs requested a discovery conference, dkt. no. 52, and a conference was held on April 4, 2021.  See Text Min. Entry dated Apr. 4, 2021; dkt. no. 56.  At that conference, the Court set a briefing schedule for plaintiffs to file a motion to compel.  See id.

### B.  Legal Standard

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule 26(b)(1) states, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .  Information within this scope of discovery need not be admissible in evidence in order to be discoverable."  FED. R. CIV. P. 26(b)(1). "Under Rule 37, following a good-faith effort to meet and confer, upon to all parties notice, "a party may move for an order compelling disclosure or discovery."  FED. R. CIV. P. 37(a).  "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'"  Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

### C.  Arguments[3]

---

[3]  Page citations to parties' submissions are to the pagination located at the header of each page, generated by the Court's electronic filing system, not to the pagination of the individual documents.

Plaintiffs argue that defendant's objections "improperly attempt to deny plaintiffs class discovery and limit the scope of plaintiffs' claims." Dkt. No. 57-1 at 4. Plaintiffs further argue that they "run afoul of the Court's December 16, 2020, Memorandum-Decision and Order, which rejected many of the same objections in denying RPI's rule 12(c) motion for judgment on the pleadings and ordered that 'plaintiffs['] complaint must proceed to discovery . . .'" Id. (quoting Dkt. No. 42 at 22). More specifically, plaintiffs contend that the Court should deny defendants' objection to the interrogatories' attempt to include in the relevant time period "information relating to the 2015-2017 academic years on the ground of relevancy," and instead restricting its responses to the 2018-2019, 2019-2020, and 2020-2021 academic years as the objection "ignores the fact that . . . [t]he 2019-2020 senior class . . . enrolled in an RPI degree program as incoming freshman for the 2015-2016 academic year." Id. at 5.

Next, plaintiffs argue that RPI's objection to class discovery should be denied as its "objection to class discovery after denial of its Rule 12(c) motion lacks any basis under the FRCP, local rules or the pretrial scheduling order in this case." Dkt. No. 57-1 at 5. Plaintiffs argue that because they "bear the burden of proof on both class certification and proving the merits of the putative class claims at trial," they would be prejudiced if they were required to "obtain all merits-based and expert discovery necessary before filing for class certification, without knowing the scope of the classes they represent, the commonality of the facts and legal issues, or the ultimate class definitions and claims certified for trial." Id. at 6.

Plaintiffs next argue that RPI's objections are improperly "generalized" and repeated for each objection. See Dkt. No. 57-1 at 6. Plaintiffs contend that defendant's

"refusal to provide discovery on the makeup of the class is patently improper," and that, because defendant "bears the burden to establish why providing such information is overly burdensome[,] [] [it's] conclusory objections are insufficient." Id. at 6-7. Plaintiffs also argue that the fact that certain responsive information "may be found somewhere on defendant's website does not relieve RPI from answering and verifying said interrogatories under oath." Id. Finally, plaintiffs contend that defendant's specific objections to interrogatories 2 through 8, and 10 through 17 should be rejected. See Dkt. No. 57-1 at 7-17.[4]

Attached to its opposition, defendant provided supplemental responses to plaintiffs' interrogatories. See Dkt. No. 62-2. In opposition, defendant first argues that its objections were not conclusory or generalized, rather they were specific and "articulated the basis" for the objections, and,"in nearly all instances, provided a thorough substantive response to each Interrogatory." Dkt. No. 62 at 4. Defendant argues that plaintiffs' definition of the relevant time period is "overbroad." Id. at 5. Defendant contends that plaintiffs' arguments relate to its "response to the COVID-19 pandemic, and the resulting transition of instruction to remote modalities during the Spring 2020 term." Id. It provides that the period of remote instruction at issue was for "a seven-week period from March 16, 2020 through April 29, 2020," or "32 days on which classes were held." Id. Further, two plaintiffs "attended the summer Arch Term, which was a twelve week program that occurred between May 26, 2020 and August 21, 2020, during which there were 59 days of classes." Id. "Despite this limited period, Plaintiffs' Interrogatories seek information for more than seven years." Id. at 6.

---

[4] As noted below, plaintiffs withdraw their motion with respect to portions of interrogatory 2 and for interrogatories 4(c), 7, 8., 10, 11, 12, 16, and 17. See Dkt. No. 64 at 6, 8-10.

Defendant disagrees with plaintiffs' argument that a greater time period is needed just because many students enrolled in a four-year degree program."  Dkt. No. 62 at 4.  As for plaintiffs' argument that the graduating class of 2020 enrolled in RPI as freshman during the 2015-2016 academic term, defendant contends that "[w]hile this may be true for some of [defendant]'s 2020 graduates, it was not necessarily true for all."  Id. Defendant further contends that "none of the three named plaintiffs was enrolled at [RPI] in 2015," but began in the 2017-2018 academic year."  Id. at 6-7.  Defendant further argues that, despite plaintiffs' argument that discovery beginning in January 2015[5] is warranted relating to the instruction students received between 2015 and 2019 and the online instruction they received due to the COIVD-19 pandemic, "[p]laintiffs do not assert any claim relating to the instruction they received during any period except the Spring and Summer 2020[.]"  Id. at 7.  Defendant argues that plaintiffs cannot argue that any "prior course of conduct' formed the basis of a contract between [RPI] and its students," and that several Courts, including in an earlier decision in this case, have made clear that "'only specific promises . . . in a school's bulletins, circulars[,] and handbooks, which are material to the student's relationship with the school, are enforceable'" and that the breach of contract between the student and school "'must be grounded in text.'"  Id.  (quoting Ford v. Rensselaer Polytechnic Inst., 1:20-cv-470, 2020 WL 7389155, at *3-4) (N.D.N.Y. Dec. 16, 2020) (additional citation omitted)).  Similarly, defendant argues that discovery remating to the "manner in which the Rensselaer Plan 2024 'was implemented during the 2015-2019 academic years before RPI switched to

---

[5]  Defendant points out that the 2016-2016 academic year began in "late August 2016, not January 1, 2015, which is the beginning of the 'relevant time period' defined by Plaintiffs."  Dkt. No. 62 at 8.

online classes'" is "nothing more than a restatement of the 'prior course of conduct' argument[.]" Id. at 8.

Defendant next argues that class-wide discovery is premature as "no class has been certified, and the only plaintiffs at the present time are the three named plaintiffs." Dkt. No. 62 at 9.  It further argues that the named plaintiffs were undergraduate students and that such students enroll at RPI "on different terms than students enrolling in master's degree or PhD programs"; thus, students in graduate programs are not relevant to plaintiffs.  Id.  Further, defendant notes that it provided plaintiffs the academic catalog "which governs tuition and fees for both undergraduates and graduate students," and, absent any graduate student plaintiff, "it is unclear what further discovery the named plaintiffs need."  Id.  Finally, as to the specific interrogatory responses, defendant argues that it has sufficiently responded to each interrogatory. See Dkt. No. 62 at 10-23.

In their reply, plaintiffs withdraw certain portions of their motion to compel based on defendant's supplemental responses.  As to interrogatory 2, plaintiffs withdraw their motion for the time period of 2018-2020, but not as to 2015-2017.  See Dkt. No. 64 at 4. Plaintiffs withdraw their motion with respect to interrogatories 4(c), 7, 8., 10, 11, 12, 16, and 17.  See id. at 6, 8-10.  The Court addresses the remaining interrogatories at issue below.

**D.  Analysis**

**1.  Class Discovery**

Plaintiffs contends that class discovery related to the putative class is appropriate because the bear the burden of proof on future class certification, and "it would prejudice plaintiffs to require that they obtain all merits-based and expert discovery necessary before filing for class certification, without knowing the scope of the classes they represent, the commonality of the facts and legal issues, or the ultimate class definitions and claims certified for trial." Dkt. No. 57-1 at 6.  Plaintiffs further argues that defendant's objections "lack[] any basis under the FRCP, local rules or the pretrial scheduling order in this case." Id. at 5.  Plaintiffs points out that the parties did not bifurcate discovery, "which creates more problems than it solves." Id. at 5-6.

Defendant argues that class-wide discovery – based on plaintiff's definition of students as "all students enrolled at [RPI]" – is premature because no class has been certified and "the only plaintiffs at the present time are the three named plaintiffs." Dkt. No. 62 at 9.  Defendant further argues that plaintiffs improperly seek "unlimited" pre-certification class discovery, and that this Court has discretion to limit pre-certification discovery. Id.

Although a class has not yet been certified, plaintiffs are entitled to discovery regarding the putative class.  It is well-settled that class discovery is necessary as "class certification cannot be evaluated without an examination of the merits – a reality that requires giving plaintiff access to discovery." Thompson v. Global Contact Svcs, LLC, 20-CV-651 (MKB/SJB), 2021 WL 1103029, at *1 (N.D.N.Y. Feb. 16, 2021) (citing Chen-Oster I, 285 F.R.D. at 299-300).  "Plaintiffs are entitled to class discovery even absent a certification motion. Class-certification discovery 'often overlaps substantially with . . .

merits' discovery." <u>Dupres v. Houslanger & Assocs., PLLC,</u> No. 19-CV-6691-RPK-SJB,

2021 WL 2373737, at *2 (E.D.N.Y. June 9, 2021) (<u>Chen-Oster I</u>, 285 F.R.D. at 299).  "

As the Southern District of New York recently explained, the reason for this "substantial

overlap"

> is because "[a] key question in class certification may be the similarity or
> dissimilarity between the claims of the representative parties and those of
> the class members—an inquiry that may require discovery on the merits
> and development of basic issues." <u>See</u> <u>Bodner</u>, 202 F.R.D. at 373
> (quoting Manual for Complex Litigation (Third) § 30.12). For this reason,
> "courts are reluctant to bifurcate class-related discovery from discovery on
> the merits." <u>Chen-Oster v. Goldman, Sachs & Co.</u>, 285 F.R.D. 294, 299
> (S.D.N.Y. 2012) (citing <u>Wal–Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338
> (2011)); <u>see also</u> <u>Hines v. Overstock.com, Inc.</u>, No. 09–CV–991 (SJ),
> 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2010) ("[W]here discovery
> relating to class issues overlaps substantially with merits discovery,
> bifurcation will result in duplication of efforts and needless line-drawing
> disputes."). Moreover, "[t]he fact that discovery may identify potential class
> members does not render otherwise proper discovery premature because
> it precedes class certification." <u>U1it4less, Inc. v. FedEx Corp.</u>, 11 Civ.
> 1713(CS)(PED), 2014 WL 12779557, at *2 (S.D.N.Y. Oct. 31, 2014); <u>see</u>
> <u>also</u> <u>Charvat v. Plymouth Rock Energy, LLC</u>, No. 15-CV-4106 (JMA)(SIL),
> 2016 WL 207677, at *2 (E.D.N.Y. Jan. 12, 2016) (declining to bifurcate
> discovery that "appear[ed] relevant to both the class and individual
> claims").

<u>Flores v. Stanford</u>, No. 18-CIV-02468, 2021 WL 4441614, at *5 (S.D.N.Y. Sept. 28,

2021).  "To obtain pre-certification discovery concerning class issues, the plaintiff must

show that 'such discovery would be relevant to [her] future motion for class

certification.'"  <u>Dupres</u>, 2021 WL 2373737, at *2 (E.D.N.Y. June 9, 2021) (quoting <u>Van

Elzen v. Revimedia, Inc.</u>, No. 17-CV-2131, 2018 U.S. Dist. LEXIS 132007, at *11

(S.D.N.Y. Aug. 3, 2018)). "Any class discovery must also be proportional to the needs of

the case and "'bear some relationship to the claims of the named Plaintiff[s].'" <u>Id.</u>

(quoting <u>Chow v. SentosaCare, LLC</u>, No. 19-CV-3451, 2020 WL 559704, at *3

(E.D.N.Y. Jan. 23, 2020)).

With respect to plaintiffs' effort to seek class discovery overall, the Court finds that such discovery is not premature. Thus, it must be determined whether the requested discovery is proportional to the needs of the case and bear some relationship to the claims of the named plaintiffs. Id.

### 2. **Graduate Students**

Plaintiffs concede that the named plaintiffs were undergraduate students during the Spring 2020 term and Arch 2020 term – the two terms primarily at issue in this litigation. See Dkt. No. 65 at 10. However, they argue that the putative class is not limited to undergraduate students. See Dkt. No. 64 at 3. Defendant argues that "undergraduate students enroll at Rensselaer on different terms than students enrolling in a master's degree or PhD programs," and, thus, it should "not be compelled to produce information for categories of students who were not enrolled under the same terms as the named plaintiffs during the Spring 2020 Term or the Arch 2020." Id. at 10. Defendant contends that, despite its objection, it produced relevant academic catalogues "which govern tuition and fees for both undergraduates and graduate students." Id.

The Court agrees that the educational experience – actual or expected – of undergraduate and graduate students would necessarily differ; however, both undergraduate and graduate students, under plaintiffs' definition, could be said to have been denied the educational experience they expected and paid for. Further, despite having potentially different expectations about their educational experience, it is not unreasonable to assume that all levels of students expected some form of in-person

instruction and that at least some graduate students may have expected and paid for on-campus accommodations and/or meal plans.  As has been oft repeated, that information is deemed discoverable does not mean the resulting material will be deemed admissible.  See FED. R. CIV. P. 26(b)(1).  Here, as including graduate students within the realm of discovery would "appear[] reasonably calculated to lead to the discovery of admissible evidence," allowing a more expansive approach toward pre-certification class discovery by including graduate students is warranted.  Id.

To the extent that discovery demonstrates that graduate students' experiences and expectations differ so significantly from undergraduate students enrolled at the same time, such issues can be addressed on the motion for class certification. As graduate students do not typically enroll in a four-year program, the Court finds it is reasonable to limit discovery regarding graduate students to the 2018-2019 and 2020-2021 academic years, including any Arch semesters.  Accordingly, plaintiffs' motion to compel is granted insofar as its interrogatories seek responses relevant to graduate students, but only insofar as they seek responses relevant to graduate students for the 2018-2021 academic years, unless otherwise specified below.


3. **Time Period**

Plaintiffs argue that the relevant time period for discovery should be January 2015 through August 2020.  See Dkt. No. 57-1 at 4-5.  In so arguing, plaintiffs contend that the 2019-2020 senior class "enrolled in an RPI degree program as incoming freshman for the 2015-2016 academic year."  Id.  Although defendant is correct in arguing that the relevant circumstances in the complaint occurred between March and

August of 2020, as the amended complaint alleges that plaintiffs did not receive the

education they had expected to receive at RPI or were promised by RPI, the students'

educational experiences during the entire time they were enrolled at RPI are at least

reasonably relevant.[6]  <u>See</u> Dkt. No. 28 ¶¶ 148, 149, 181. A s plaintiffs point out, the

putative class includes those who began their education at RPI in fall 2015; thus, they

contend that defendant "ignores the fact that . . . [t]he 2019-2020 senior class . . .

enrolled in an RPI degree program as incoming freshman for the 2015-2016 academic

year." Dkt. No. 57-1 at 5. Thus, it is arguable that the experience they "expected" at

RPI includes that from the beginning of their education, which, for some members of the

putative class, would have begun in August 2015, the start of the Fall 2015 semester.

The Court finds that the appropriate time period for discovery is from August 2015

through August 2020, except where specifically noted otherwise.  Discovery from prior

to August 2015 is not warranted, as the seniors in the 2019-2020 class year would have

begun their program at RPI at the start of the fall semester, in August 2015, not in

January 2015.

To the extent plaintiffs seek discovery responses for the time period beginning in

January 2015, the Court finds that plaintiff has failed to demonstrate discovery relating

to the months of January 2015 to July 2015 is relevant to the claims in the amended

complaint.  Plaintiffs justify the extended time period by noting that the putative class

---

[6]  In response to plaintiffs' argument that the students who graduated in 2020 enrolled at RPI as freshman in the 2015-2016 academic year, defendant contends, "[w]hile this may be true for some of Rensselaer's 2020 graduates, it was not necessarily true for all." Dkt. No. 65 at 7.  Certainly, there may be some 2020 graduates who came to RPI as transfer students, enrolling later than 2015, or potentially other 2020 graduates who started at RPI later than 2015 for other reasons. However, the Court cannot fathom of the merit of any argument that suggests that just because some graduates may have begun their studies at RPI after the 2015 school year, no discovery as to the 2015-2017 academic years is relevant, even though, as defendant must admit, at least "some" 2020 graduates began their studies at RPI for the 2015-2016 year.

would include those who commenced their education in the fall 2015 semester.  Thus, as those students would not have begun their education at RPI until August 2015, plaintiffs have not demonstrated that discovery preceding the August 2015 date is relevant.[7]

Accordingly, plaintiffs' motion to compel is granted to the extent that, insofar as plaintiff seeks discovery, such responses, where applicable, must pertain to the time period running from August 2015 to August 2020.  Insofar as defendant has produced already produced discovery relevant to later academic years in response to the interrogatories, defendant must supplement these responses for these additional years.[8]  Further, to the extent this Court concludes that responses are needed to interrogatories to which defendants did not respond, any such responses, where relevant, must include information relevant to the 2015-2020 academic years unless otherwise noted.

### 3. Specific Interrogatories

Following plaintiffs' withdrawals to portions of the motion to compel and the issues addressed above, the remaining interrogatories in dispute are interrogatory 3, portions of interrogatory 4, and interrogatories 5, 6, 13, 14, and 15.  See generally Dkt. No. 64.

---

[7] The Court is not convinced that the fact that the Rensselaer Plan 2024 was "created" in 2013 justifies a time frame any earlier than August 2015, as the proposed class, as plaintiff defines, would not include a student who matriculated prior to August 2015, and, thus, the student could not be reasonably said to have had any schooling experience or expected schooling experience until they commenced their educational studies with RPI.  Dkt. No. 57-1 at 5.

[8] For example, plaintiffs notes that defendant responded in part to interrogatory number 3 by providing the types of fees it charged to RPI undergraduate students for the 2019-2021 academic years.  RPI must supplement its response to this interrogatory and to all interrogatories to which it has already provided responses for later academic years. Similarly, for all interrogatories to which defendant responded without objection, RPI is to supplement its responses by providing information for the 2015-2017 academic years. The Court will discuss below the interrogatories to which defendant has provided no response.

### a. Interrogatory 3

Insofar as plaintiffs seek responses relevant to graduate students, that request is granted for the reasons set forth above.  Plaintiffs argue that RPI improperly declined to respond to subcategories (c) through (f) of interrogatory 3.  <u>See</u> Dkt. No. 64 at 4. Defendant contends that it responded "by providing a chart that identified three types of fees charged by [RPI] to undergraduate students (the Activity Fee, the Health Center Fee and the Orientation Fee), the category of students to which the fee was charged, a description of the fee and the cost of each fee for the 2018-2019, 2019-2020, and 2020-2021 academic years.  <u>See</u> Dkt. No. 62 at 11.

### i. Interrogatory 3(c)

Interrogatory 3(c) seeks "the amount and type of expense each Mandatory Student Fee was budgeted to cover (i.e., how the revenue generated from the fee was allocated to be spent, broken down by service/activity/benefit to be provided, and corresponding amount for each Mandatory Student Fee to the extent any were intended for multiple purposes."  Dkt. No. 57-3 at 5.

Defendant argues that it responded by providing "a narrative description of the fee."  Dkt. No. 62 at 11.  In addition to general objections to subcategory (c) -- the information did not apply uniformly to the entire student body, it was overly burdensome, and it is publicly available on defendant's website -- defendant contends that it "does not maintain the specific breakdown requested in subparagraph (c)."  Dkt. No. 57-3 at 6; Dkt. No. 62 at 11. Defendant argues that the Federal Rules state that it is not required to create a document not already in existence or provide information that is not within an

existing document.  Id. (quoting Daigle v. United States Dep't of Vet. Affairs, 5:00-CV-189, 2001 WL 37124712, at *2 (N.D.N.Y. Oct. 1, 2001).

Plaintiffs argue that Daigle is irrelevant as it "involved document requests under Rule 34" and that "the fact that responsive information was not previously compiled in a document tailored to an interrogatory demand is not an excuse for a party to avoid answering facts or contentions to the best of its ability."  Dkt. No. 64 at 4-5.

The Court agrees that Daigle addresses document discovery, and specifically notes in a footnote following defendant's cited portion that "[t]his does not preclude a party from requesting such information through other appropriate vehicles including . . . through interrogatories[.]" Id. at 2 n.3.  Although the Court does not go so far as to conclude that there can never be a scenario where a party could not be compelled to compile or create a document not already in existence, where such information is deemed relevant for the purposes of discovery but does not appear to exist in a format readily providable to the plaintiff, requiring creation of such a document or compilation is proper.  However, where a party affirms that it does not have records, or a reasonable way of obtaining records, such that the requested creation of a document or compilation would not be possible, no such requirement can be made.

Here, as defendant maintains that it does not maintain records of the "breakdown" in the amount of expense the student activity fee was expected to cover, the Court finds that defendant's response largely suffices to address plaintiffs' interrogatory.  However, to the extent that defendant may be able to obtain this information from more general budget sources, even if not compiled into a separate document, defendant is directed to provide that information to plaintiffs.  For example, if

such information relating to the budgeting and/or expenses relating to mandatory student fees is contained within the general budget and/or auditing documents that have already been produced, defendant is directed to provide plaintiffs with the specific Bates-stamped page numbers/locations for this information.  As it relates to the type of expense that the mandatory student fees were expected to cover, the Court finds that defendant's response describing the fee would appear to sufficiently answer the interrogatory.

Accordingly, plaintiffs' motion to compel as to interrogatory 3(c) is granted insofar as defendant is directed to provide plaintiff with Bates-stamped page numbers or locations within budgetary/auditing documents where information relating to budgeting or expenses for mandatory student fees are located, if such information exists within those documents.  Plaintiffs' motion to compel as it relates to interrogatory 3(c) is otherwise denied.

### (ii) Interrogatory 3(d)

Interrogatory 3(d) sought "what [d]efendant contends it was obligated to provide in exchange for the payment of the fee."  Dkt. No. 57-3 at 5.  Defendant argues that it answered subcategory (d) by "providing a description of each fee."  Id.  Although plaintiffs' motion to compel includes subcategory (d), generally, within its argument that defendant's responses were insufficient, plaintiffs' motion to compel does not specifically address why it found defendant's answer to interrogatory 3(d) insufficient. Dkt. No. 57-1 at 8-9; Dkt. No. 64 at 4-5. The Court reviewed defendant's answer to subcategory (d) and finds that it sufficiently answers the interrogatory insofar as it

identifies each fee charged, provides a description of the fee, along with the cost of the fee, and further explains that the "Rensselaer Union is a student organization that encompasses, but is not limited to, student government, clubs, and intramurals." Dkt. No. 57-3 at 7.  Thus, the Court finds that this answer is sufficiently responsive to interrogatory 3(d).  However, plaintiffs' motion to compel as it relates to interrogatory 3(d) is granted insofar as defendant must (1) provide the cost of these fees for the 2015-2017 academic years for the reasons set forth below, and (2) address whether graduate students were charged such fee, and if so, the cost of such fee charged to graduate students for the 2015-2020 academic years.  As plaintiffs point to no specific deficiency in defendant's answer to interrogatory 3(d), and the Court cannot identify one, their motion to compel, as it relates to interrogatory 3(d) is otherwise denied.

### (iii) Interrogatories 3(e), (f)

Interrogatory 3(e) sought information regarding "how the revenue from the fee was spent in relation to how it was originally budgeted."  Dkt. No. 57-3 at 5. Interrogatory 3(f) sought "the number of Students who had access to, and the number of Students who actually used, the benefits each Mandatory Student Fee was intended to cover."  Id.  In response to interrogatories 3(e)-(g), defendant responded that it did not keep such records in the ordinary course of its operations.  Id. at 6.  In its supplemental response, with respect to interrogatory 3(f), defendant provided the number of undergraduate students charged the activity fee and health center fee for the Spring 2020 and Arch 2020 terms and stated that the activity fee was reduced by 50% during those two semesters.  See Dkt. No. 62-2 at 5.

17

Insofar as plaintiffs argue that defendant could answer interrogatory 3(f), in part, by stating whether the student union was open and if intramural were available during the times in question, the Court agrees.   Defendant must supplement its interrogatory response by indicating whether the student union was open and whether the intramurals, clubs, and/or activities covered by the student fee were running and/or available to students during the Spring 2020 and Arch 2020 semesters.  However, as defendant maintains that it does not keep records of the number of students who take advantage of the student activity fee's benefits, beyond the additional detail above, plaintiffs' request to compel insofar as it seeks the number of students who "take advantage" of the student activity fee is denied.  See Dkt. No. 62 at 12.  Indeed, as defendant has stated that it does not track the number of students who take advantage of each benefit provided through the student activity fees, it would not be reasonably possible for defendant to now attempt to calculate the number of students who accessed such services covered by the activity fee during the Spring 2020 and Arch 2020 terms.  See id.  However, defendant is directed to provide the number of graduate students, if any, who were charged the mandatory student activity fee during the Spring 2020 and Arch 2020 terms.

As to the Health Center Fee, Defendant clarified that the Health Center Fee was not reduced or refunded as the Health Center was still open to students and available to students. See Dkt. No. 62 at 18.  Defendant further provided that it did not maintain records as to the number of students who took advantage of the Health Center.  See id. at 12.  As defendant sufficiently addressed this interrogatory by clarifying that the Health Center was open and available to students during the semesters in question, and that it

did not keep track of the students who use or benefit from the Health Center's services, plaintiffs' request to compel further information relating to the number of students who used the services covered by the Health Center Fee is denied.  The Court cannot require defendant to provide a number, or estimated number, of students who took advantage of the Health Center's benefits if it does not keep records of the students who used its "medical, counseling, health promotion, and disability accommodation/advocacy services" during the Spring 2020 and Arch 2020 terms. However, the Court finds that defendant must provide the number of graduate students who were <u>charged</u> the Health Center Fee for the Spring 2020 term, and, if applicable, the Arch 2020 term.

As to interrogatory 3(e), requesting information on how the revenue from the fee was spent in comparison to how it was originally budgeted, to the extent that defendant's response suggests that it does not keep track of how the student activity fee revenue is spent versus budgeted, the Court finds that this statement sufficiently addresses plaintiff's interrogatory.  However, to the extent that information relevant to budgeting for the mandatory student fees is contained within the budget and/or audit information defendant has already provided to plaintiff, defendant is directed to point out where in the responsive documents budgetary items related to the student activities fee are located.

In sum, plaintiffs' motion to compel is granted as to interrogatory 3(e)-(f) insofar as defendant must provide to plaintiffs (1) the number of graduate students who were charged a student activity fee and/or health center fee during the Spring 2020 and Arch 2020 terms; (2) whether the student union was open to students during the Spring 2020

and Arch 2020 terms; (3) whether any of the benefits of the student activity fee, such as clubs and intramurals, were available to students during the Spring 2020 and Arch 2020 terms; and (4) where, if anywhere, in the budget and/or auditing documents already produced, there is information relevant to the mandatory student fees.

### iv. Interrogatories 3(g)-(h)

Interrogatory 3(g) sought the "number, by job title, of any employees associated with the provision of any facilities, services, activities, or benefits paid in full or in part by the Mandatory Student Fees and the hours worked from the beginning of Spring 2019 through the present."  Dkt. No. 57-3 at 6.  Interrogatory 3(h) sought, with respect to employees identified by interrogatory 3(g), any employees who were "terminated or furloughed and the savings from such employment actions on account of the COVID-19 pandemic."  Id.

In its supplemental response to interrogatory 3(h), "pursuant to Federal Rule of Civil Procedure 33(d)," defendant referred plaintiffs to four Bates-stamped documents "which concern institutional furloughs."  Dkt. No. 62-2 at 5.  Plaintiffs acknowledge that this response addresses furloughed staff but contends that it "fails to answer whether any of the revenue generated by the mandatory fees was used to compensate said staff," and that RPI's response that it "'does not tie employee compensation to the budgeted revenue from a particular fee'" is insufficient.  Dkt. No. 64 at 6.  Plaintiffs argue that RPI should "identify what budget lines are funded by the fees.  If fees are deposited into the general budget that that [sic] paid salaries, then defendant should acknowledge that."  Id.

20

The Court understands defendant's response to plaintiffs' question asking whether any of the student fees were used to compensate staff -- that employee compensation is "not tied to a particular fee" -- as definitively concluding that none of the "revenue generated by the mandatory student fees was used to compensate . . . staff," and, thus, this response sufficiently addresses the interrogatory.  Dkt. No. 64 at 6.   To the extent defendant can assess "what budget lines are funded by the fees," defendant is required to answer.  If the mandatory student fees fund the student activities, alone, defendant should state as such.  Accordingly, the motion to compel as to interrogatories 3(g)-(h) is granted insofar as defendant is directed to respond to the question of what budget lines are funded by student fees.  However, to the extent that the interrogatory seeks information regarding whether student fees were used to compensate staff, the Court finds that defendant sufficiently answered this question, and, thus, the motion to compel is denied in that respect.  As plaintiffs acknowledge that defendant addressed their question about furloughed staff, the motion to compel with respect to furloughed staff is denied.[9]

### b.  Interrogatory 4

In their reply, plaintiffs do not raise any objection to defendant's supplemental response to interrogatory 4(a), thus the Court deems this response to be satisfactory and any objection to it waived.  Further, plaintiffs explicitly withdraw the motion to compel as it relates to interrogatory 4(c).  Plaintiffs maintain objections to subsections 4(b), (d), (e), (f), and (g).  The Court addresses these subsections below.

---

[9]  Furthermore, the Court finds the interrogatory overbroad insofar as it seeks the hours the staff worked from 2019 to the present.

### i. Interrogatory 4(b)

Interrogatory 4(b) seeks "the amount and types of expense the tuition was budgeted to cover (i.e., how the revenue generated from the tuition was allocated to be spent)." Dkt. No. 57-3 at 8.  Defendant objected, stating the information did not apply to the student body uniformly as tuition differs based on particulars for each student and because it requests information publicly available on RPI's website.  See Dkt. No. 57-3 at 8-9.  Plaintiffs argue that defendant should "disclose how much revenue it budgeted and collected from tuition," along with "what expenses are associated with the services that it provided in exchange for the tuition paid by plaintiffs, i.e., instructors, teaching assistants, classrooms, offices, laboratories, libraries, computers, utilities, etc."  Dkt. No. 57-1 at 11.

Defendant appears to contend that it sufficiently answered this interrogatory insofar as in its Rule(c) motion it "[s]tated that it was obligated to provide instruction and academic credit in exchange for a student's tuition payment," and in response to interrogatory 4, it "identified the number of credits a student could obtain through the payment of the undergraduate tuition rate for three academic years."  Dkt. No. 62 at 14.

The Court determines that further clarification is needed.  Providing the cost of tuition and the amount of credits that tuition would cover does not address fully plaintiffs' request in interrogatory 4(b) as it fails to specify what categories of expenses the tuition is budgeted to cover.  Even if defendant does not maintain records of the actual breakdown of numbers of how much of tuition payment is funneled into each category, it should be reasonably expected that it could provide whether tuition was *budgeted* to cover any of these categories.  Accordingly, plaintiffs' motion to compel is granted

insofar as defendant must provide what expenses students' tuition payments were budgeted to cover. Therefore, defendant must address whether tuition was budgeted to cover expenses associated with instruction, and if so, what expenses it was budgeted to cover, such as "instructors,[10] teaching assistants, classrooms, offices, laboratories, libraries, computers, utilities, etc." Dkt. No. 57-1 at 11. Defendant did not include interrogatory 4(b) as a category of information it did not maintain in the ordinary course of business. See Dkt. No. 57-3 at 9.[11]

Accordingly, plaintiffs' motion to compel as it relates to interrogatory 4(b) is granted as follows: defendant is to supplement its response by detailing the categories of expenses that tuition is budgeted to cover. If defendant does not maintain separate records breaking down how student tuition was intended to be spent, but this information may be located within the general budget or auditing documents already overturned to plaintiffs, defendant is required to identify where in these documents information relating to budgeting or expenses associated with tuition can be located, identifying specified Bates-stamped pages. Plaintiffs' motion to compel as it relates to interrogatory 4(b) is otherwise denied.

### ii. interrogatory 4(d)

Interrogatory 4(d) asks "how the revenue for the tuition was spent in relation to how it was originally budgeted." Dkt. No. 57-3 at 8. In its objections, defendant stated

---

[10]   To the extent that defendant maintains that tuition is not budgeted to cover employee compensation, this response sufficiently addresses the portion of the interrogatory seeking whether tuition is budgeted to cover "instructors." Dkt. No. 62 at 15.

[11]   Noting that it did not maintain information requested in subparts (d), (e), (f), and (g) in the ordinary course of business. See Dkt. No. 57-3 at 9.

that it did not "in the ordinary course of operations, maintain certain of the categories of information requested" in interrogatory 4(d)-(g).  Dkt. No. 57-3 at 9.  As noted above, defendant further provided the cost of tuition for the 2018-2021 academic years and the amount of credits that tuition would cover.  Id. Plaintiffs argue that this interrogatory is relevant to "determining the value of [RPI's] in person programming" and whether RPI was unjustly enriched by "keeping the money that plaintiffs paid expecting in-person instruction." Dkt. No. 57-1 at 11. Further, plaintiffs argue that defendant should "disclose how much revenue it budgeted and collected from tuition," along with "what expenses are associated with the services that it provided in exchange for the tuition paid by plaintiffs, i.e., instructors, teaching assistants, classrooms, offices, laboratories, libraries, computers, utilities, etc."  Id.

Defendant does not address interrogatory 4(d) in its opposition.  See generally dkt. no. 62.  Plaintiffs argues, generally, that defendant's response to interrogatory 4, generally, was insufficient as its opposition stating that it did not "maintain" such information in the ordinary course of business was "incredulous" because RPI "has a budget," "[o]ne of its sources of income is tuition," and, thus, RPI should be required to provide such information.  Dkt. No. 57-1 at 11.

In responding to this interrogatory, defendant answered a different question – what services students can expect to receive in exchange for their tuition payments. However, it did not address the distinct question asked – how tuition payments were spent.  Although it would not be an unreasonable to assume that tuition payments were budgeted to cover the expenses associated with providing instruction to the students and covered such costs, defendant did not provide such an answer.  The Court agrees

with plaintiffs to the extent that defendant should be able to provide the expenses

defendant associates with providing educational instruction and what tuition is expected

to cover and what it is spent on, generally.  Accordingly, plaintiffs' motion to compel is

granted insofar as defendant must provide what expenses students' tuition payments

covered for the 2018-2019 and 2019-2020 academic years and Arch 2020 terms.  If

defendant cannot provide such further information through reasonable efforts,

defendant is directed to explain why it was unable to isolate that information.

### iii.  Interrogatory 4(e)

Interrogatory 4(e) seeks the "revenue, profit, and loss associated with Students'

tuition payments."  Dkt. No. 57-3 at 8.  Plaintiffs contends that RPI's response to 4(e),

which "identif[ies] student related revenue from 'tuition and fees' on a single line item,

together with various categorical line items of operating and nonoperating expenses (i.e.

salaries and wages; employee benefits; supplies, services and other; occupancy, taxes

and insurance; interest on debt; depreciation and amortization; student aid and

fellowships."  Dkt. No. 64 at 7.  In its supplemental response, and "pursuant to Federal

Rule of Civil Procedure 33(d), Defendant refers Plaintiffs to [RPI]'s audited consolidated

financial statements as of June 30, 2019 and 2018 [] and as of June 30, 2020 and 2019

[]."  Dkt. No. 62-2 at 6.

Plaintiffs argue that the "broad categories of expenses" defendant identifies in

referring to its consolidated financial statements are not responsive to their demands as

the statements "identify student related revenue from 'tuition and fees' on a single line

item, together with various categorical line items of operating and nonoperating

expenses," and that the responses also "fail to specify which expense categories were

25

paid from tuition revenue." Dkt. No. 64 at 7.  Although the Court does not have access to the document production, the Court agrees that, to the extent the interrogatory responses fail to specify which of the expenses listed, if any, were associated with or paid from tuition, further information is needed.  The Court finds it reasonable that to the extent that revenue and profit relating to student tuition payments can be located within the financial statements already produced, defendant is directed to provide to plaintiffs where in these documents that information can be located.  If the information cannot be ascertained from the financial statements produced, defendant is directed to separately provide this information, whether or not it is already contained within an existing document.  If defendant has no method of assessing what expenses are paid from tuition revenue, defendant must clarify as such.

Accordingly, plaintiffs' motion to compel as it relates to interrogatory 4(d) is granted insofar as defendant is directed provide to plaintiffs which expenses, out of those listed within its prior responses, were paid from tuition revenue.  To the extent that defendant does not maintain its budget in such a way that it would be able to determine the category of expenses covered by tuition fees, or if tuition is placed in a general fund such that it cannot be reasonably determined which expenses were paid for by tuition, it must supplement its response to interrogatory 4(d) to state as such.

### iv.  Interrogatory 4(f)

Interrogatory 4(f) sought "the number, by job title, of any Employees associated with the provision of any facilities, services, activities, or benefits paid in full or in part by tuition and the hours worked from the beginning of Springy; [sic] 2019 through the

present."  Dkt. No. 57-3 at 8.  Defendant responds that it "does not tie employee compensation to the budgeted revenue from tuition" and that it "produced documents concerning employees that were furloughed because of the pandemic, but any resulting 'savings' in furloughed employees' compensation has no direct relation to the payment of tuition by students."  Dkt. No. 62 at 15.

Plaintiffs argue that, to the extent defendant contends that it does not maintain such records and that it should not be compelled to create a document not in existence, defendant should be required to create such a document.  See Dkt. No. 64 at 4, 7.  The Court finds that defendant's response suffices to respond to interrogatory 4(f).  The Court understands defendant's response to mean that there were no employees whose compensation was drawn, to any degree, from budgeted revenue from tuition. However, if it is the case that the Court's assessment of defendant's response is inaccurate, defendant is directed to supplement its response with the appropriate clarification. If it is the case, for example, that employees are paid from a general budget from which tuition is drawn, defendant is to make that clear to plaintiffs in such supplemental interrogatory response.

v. **Interrogatory 4(g)**

Interrogatory 4(g) seeks "the number, by job title, of any Employees included in Your response to subparagraph 4(f) . . . that were terminated, or furloughed and the savings from such employment action on account of the COVID-19 pandemic."  Dkt. No. 57-3 at 8.  In its supplemental response, pursuant to Rule 33(d), defendant referred plaintiffs to four produced documents "which concern institutional furloughs." Dkt. No.

62-2 at 6.  Further, defendant provided, "[i]n addition to the documents identified in response to subparagraph (b), (e), and (g), with respect to subparagraph (i), Defendant supplements its response by identifying the bates numbers of the following documents that have been produced," and references [RPI] Catalog[s] for 2015 through 2021.  Id. at 6-7.  Defendant further stated that it "does not tie employee compensation to the budgeted revenue from tuition.  [RPI] has produced documents concerning employees that were furloughed because of the pandemic, but any resulting 'savings' in furloughed employees' compensation has no direct relation to the payment of tuition by students. Dkt. No. 62 at 15.

Plaintiffs argue that defendant "should disclose whether it realized any profit or loss, including any cost-savings from the termination or furlough of employees who provided services paid for by tuition."  Dkt. No. 57-1 at 11.  As the Court does not have the responsive documents before it, it cannot say what those documents included as it relates to terminated or furloughed employees.  However, defendant has responded that it does not "tie" employee compensation to student tuition and that "savings" from furloughs were not directly related to tuition payments. Dkt. No. 62 at 15. The Court understands this response to mean that employee compensation is not paid in any part from revenue generated by tuition.  However, if it is the case tuition pays, in any part, employee compensation, defendant must supplement its response to state as such.  If defendant is unable to determine whether or to what extent revenue from tuition pays employees' compensation, it must clearly state as such in a supplemental response to plaintiffs and explain why it is unable to make this determination.  Accordingly, plaintiffs'

motion to compel with respect to interrogatory 4(g) is granted to the extent set forth above.

### vi.  Interrogatory 4(i)

Interrogatory 4(i) requests the supporting documents defendant used to answer all of the subparts of interrogatory 4.  See Dkt. No. 57-3.  Plaintiffs "request that the court compel RPI to identify any documents that defendant uses to determine its responses."  Dkt. No. 57-1 at 11.  Defendant argues that it answered interrogatory 4(i) "by identifying the Undergraduate Catalog, which lists the tuition charged to students and the website pages of the Bursar and Registrar, which contain information concerning tuition[,] . . . Undergraduate Catalogues for the 2015-2016 . . . [through] 2020-2021 academic years[,] . . . student financial account statements for each of the named plaintiffs[,] . . . [and] [RPI's] operating budgets for the 2018-2019, 2019-2020, and 2020-2021 academic years."  Dkt. No. 62 at 15.

If the above-identified documents are all of the documents defendant relied on to provide its answers, the Court finds that defendant sufficiently answered interrogatory 4(i).  However, as it relates to the supplemental responses this Court has directed to provide in response to this motion to compel, defendant is directed to identify any further documents it ends up consulting in order to provide supplemental responses in compliance with this Order.

### c. Interrogatories 5 & 6

29

Plaintiffs argue that RPI's responses fail to answer subparts (b), (d), (e), and (f) to interrogatories 5 and 6.  Interrogatory 5 seeks "all rates charged by Defendant for Housing for each Academic Period during the relevant time period," and the relevant subparts seek: "(b) the amount and type of expense each such rate was budgeted to cover by Housing category (i.e., how the revenue generated from the fee was allocated to be spent)"; "(d) how the revenue was spent in relation to how it was originally budgeted"; "(e) if all or part of the revenue from the Fee was not spent as originally budgeted, what it was used for"; and "(f) [RPI]'s revenue, profit, and loss associated with each category of Student Housing[.]" Dkt. No. 57-3 at 10.

Interrogatory 6 seeks "the fees charged by Defendant for Student Meal plans for each Academic Period during the relevant time period," and the relevant subparts seek: "(b) the amount and type of expense each fee was budgeted to cover by category of Meal Plan (i.e. [sic] how the revenue generated from the fee was allocated to be spent); (d) "how the revenue for the fee was spent in relation to how it was originally budgeted"; "(e) if all or part of the revenue from the fee was not spent as originally budgeted, what it was used for"; and "(f) [RPI]'s revenue, profit, and loss associated[] with each category of Student Meal Plan[.]"  Dkt. No. 57-3 at 11-12.

 Plaintiffs acknowledge that defendant "produced certain budget models for residence and dining revenue and expenses . . . [, and] certain consolidated financial statements.  However, the models and financial statements do[12] [sic] identify any

---

[12]   Although plaintiffs state that the produced documents "do" identify specific housing or meal expenses "or what RPI did with the projected net revenue," it appears that this is scrivener's error, and that context suggests that plaintiffs intended to write that the documents do not identify this information.  Dkt. No. 64 at 8.

specific housing or meal expenses or what RPI did with the projected net revenue."
Dkt. No. 64 at 7.

Defendant contends that it "seems self-explanatory that [RPI] charged housing rates in exchange for permitting students to reside in campus-owned housing and for programming those students, and that it charged meal plan rates to students in exchange for providing meals."  Dkt. No. 62 at 16.  Defendant elaborates that it provided the cost for "single student, on-campus housing" for the 2018-2021 academic years, that these costs were also contained within the catalogs produced through document demands, as well as the housing and meal plan charges – if any – for the named plaintiffs "throughout their enrollment."  Id.  Defendant argues that it should not be required to break down "how revenue from housing and meal plan charges was budgeted to be spent" and "trace meal and housing charges to specific expenses for employee compensation and other expenses."  Id. at 17.  Further, defendant maintains that it should not be required to "explain why it does not compile financial data in the manner Plaintiffs wish" as it need not "prepare compilations and analyses in response to Plaintiffs' document demands."  Id.

First, particularly because the Court does not have the document production before it, it is unclear what plaintiffs are seeking in stating that the information defendant provided failed to "identify any specific housing or meal expenses."  Dkt. No. 64 at 7.
Second, the Court finds it relevant and reasonably related to the discovery of relevant evidence for defendant to answer whether student housing or meal plan charges were budgeted to cover expenses beyond student housing or meal plans, and if so, to identify those expenses.  If defendant is unable to determine whether charges for student

housing or meal plans paid for expenses beyond housing or meal plans, defendant must state as such and explain why it is unable to make that determination.  Therefore, plaintiffs' motion to compel as it relates to interrogatories 5 and 6 are granted to the extent set forth above.

### d. Interrogatory 13

Interrogatory 13 seeks, "[f]or the previous ten (10) years, please list any consulting company, marketing company, public relations company or lobbying company to which you have paid money and any trade organizations of which you have been a member."  Dkt. No. 57-3 at 20.

Defendant objected to interrogatory 13 as "overbroad and not proportionate to the needs of this case" because it "seeks information that is not relevant to the claims or defenses at issue in this litigation" due to the breadth of the time period sought, and because it seeks information about "any" company or trade organization, "whether or not the engagement or membership relates in any way to any of the allegations in Plaintiffs' Consolidated Amended Complaint."  Dkt. No. 57-3 at 20-21.

Plaintiffs contend that it is "merely requesting that defendant identify third parties who may be in possession of discoverable information related to the marketing of its educational services to members of the putative classes, such as the Rensselaer Plan 2024, CLASS program, website, brochures, advertisements, etc."  Dkt. No. 57-1 at 14-15.  Plaintiffs further argue that defendant should answer "why this request is overbroad," including whether a list of this information has been compiled or whether

defendant consulted "with its Marketing & Media Relations department" to obtain this information.  Id. at 15.

The Court agrees that, as written, plaintiffs' request is overbroad and not specifically related to the claims in this case as it would necessarily include companies hired or memberships fully unrelated to marketing its programs to students.  To the extent plaintiffs seek information regarding consulting companies, marketing companies, public relations companies, or lobbying companies hired, it is appropriate to limit the interrogatory response to those companies or organizations related to marketing educational services to students or prospective students.  Similarly, insofar as plaintiffs seek information about defendant's memberships in trade organizations, plaintiffs have demonstrated relevance only to the extent that membership would involve some kind of benefit(s) or guidance relating to marketing its educational programs to educational students.  Thus, defendant is directed to produce only the names of any consulting company, marketing company, public relations company, or lobbying company it hired to market its educational services to students or prospective students and any trade organization of which it was a member if membership involved the provision of a benefit or guidance relating to marketing its educational programs to students or prospective students.  It would suffice to include the time span from 2013 – two years before many of the students of the graduating class of 2020 would have likely commenced their education – through 2020.  If no such companies were hired during this time span and/or if defendant were a member of no such organization, a clear statement to that effect suffices to respond to this interrogatory.  Accordingly, plaintiffs'

33

motion to compel with respect to interrogatory 13 is granted to the extent set forth above and otherwise denied.

**e. Interrogatory 14**

Interrogatory 14 seeks a detailed explanation of

> the method by which [RPI] could create a list or report that identifies each student who paid fees or tuition to attend classes and/or obtain education from [RPI] for the Spring 2020 and/or The Arch 2020 semesters, and that further identifies the amount(s) charged and/or paid and any refund(s) or other adjustments made to said students' accounts.

Dkt. No. 57-3 at 21. Plaintiffs demanded any such response "include, but not be limited to[,] identification of the individual(s) who could/would conduct such analysis, the amount of time such analysis would take to perform, and identification of the specific software, programs, or other systems that contain and would be utilized to provide such information." Id.

Defendant responded that it would

> input the student's name or identification number into its Banner accounting software, and query data regarding the amounts charged to the student and payments made by the student for a specified time period. This information would be prepared by personnel in the Bursar's Office. The time required to obtain data for a particular student is nominal; however, it is unknown the time required to compile such data collective for all of the students who were enrolled at [RPI] during the Spring 2020 semester and The Arch 2020.

Dkt. No. 57-2 at 21. Plaintiffs contend that defendant's response was insufficient to answer interrogatory 14 as it is "simply incredulous to believe that RPI – including its Computer and Systems Engineering Department – cannot identify a method to create a list of putative class members from its accounting software, i.e., students who paid for tuition, housing, meal plans, etc." Id. Plaintiffs opine that Banner software "appears to

be a robust product that offers extensive reports." Id.  Further, plaintiffs argue that defendant must identify "the specific Banner software program, its technical support at Banner, or any other individual by name who may be contacted or deposed regarding this issue." Id. at 15-16.

To the extent that plaintiffs argue that defendant should be required to obtain a search method or Banner software that it does not already have access to, the Court denies plaintiffs' motion to compel.  However, as it is unclear to the Court from defendant's response whether it has the capability to produce search results for all students who paid for tuition, housing, or meal plans during the Spring 2020 or Arch 2020 terms other than by entering each students' name individually into the Banner software, defendant is directed to supplement its response by indicating the efforts it took and will take to determine whether its Banner software, or other program to which it has access, has the capability of producing a list or result that displays the names or identification numbers of all students who have paid for tuition, housing, or meal plans during the Spring 2020 and Arch 2020 terms, as well as a list of students who were provided any refunds for these fees.  If it is determined that such a list can be complied, either in part or in whole, defendant is directed to take reasonable efforts to provide a general estimation, if any, of the time it would take to provide such a list.  If no such list can be compiled through plaintiffs' current Banner software or other software programs, either in whole or in part, defendant must clearly state as such to plaintiffs.

Defendant is further directed to provide the "specific Banner program" it currently uses.  Although the Court is unsure whether defendant has a specific "Banner support person," to the extent that there is a specific name, contact number, or e-mail address

35

that defendant uses or has been provided with by Banner for Banner technical support,

defendant must provide that name, contact number, or and/or e-mail address to

plaintiffs.  If there is no such contact information, defendant must clearly state as such.

Further, to the extent that there is an employee or employees at the Bursar's office who

would perform such searches or other RPI employees who provide technical support to

the Bursar's office for Banner use, such names must also be provided to plaintiffs.

Accordingly, plaintiffs' motion to compel as it relates to interrogatory 14 is granted to the

extent set forth above and is otherwise denied.

### f. Interrogatory 15

Interrogatory 15 seeks RPI to

> [i]dentify in separate lists each Student enrolled for the Spring 2020 and
> Arch 2020 semesters, the tuition, Mandatory Student Fees, Housing
> Rates, Meal Plan fees charged and paid, and any refund(s), credit(s) or
> other monetary adjustment(s) (i.e., scholarships and grants) made to each
> Student account.  To the extent applicable laws or regulations prevent
> [RPI] from identifying Students by name, a de-identified list using a unique
> identifier for each student is applicable pending a ruling on class
> certification.

Dkt. No. 57-3 at 21.

Defendant objected to interrogatory 15 as premature as no class had been

certified, it was unduly burdensome, and that "the information sought, to the extent it is

relevant, relates to alleged damages."  Dkt. No. 57-3 at 22.  Defendant indicated that it

would produce a financial account statement for all named plaintiffs setting forth the

tuition, fees, housing, and meal plans they paid for, along with any refunds or credits,

and dates of all transactions.  Id.  Plaintiffs argue that defendant's "refusal to identify

information relevant to class certification is without merit" as such "information is

relevant to class certification issues of numerosity, commonality, typicality, and damages." Id.

The Court agrees with plaintiffs that their request for pre-certification class discovery is not premature.  The Court grants plaintiffs' motion to compel with respect to interrogatory 15 insofar as defendant must identify and produce to plaintiffs, through use of student identification number or other non-name personal identifier, all students – undergraduate and graduate – who were charged tuition, housing fees, mandatory student fees, or meal plan fees for the Spring 2020 and Arch 2020 terms, as well as any refunds or credits made due to a lack of on-campus education/programming, meal plans, student activities, or housing due to COVID-19.  To the extent interrogatory 15 seeks additional information beyond tuition, mandatory student fees, housing fees, student fees, or meal plan fees charged to all undergraduate and graduate students for the Spring 2020 and Arch 2020 terms, along with any credits or refunds provided to such students relating to a lack of on-campus education/programming, housing meal plans, student activities, or housing associated with COVID-19, such motion is denied.

## II. Motion to Compel Production of Documents

On October 13, 2020, plaintiffs served their request to produce documents.  See Dkt. No. 60-1 at 1.  On April 8, 2021, defendant submitted its responses.  See Dkt. No. 60-2.  Defendant submitted supplemental responses on April 16, 2021, and May 3, 2021.  See Dkt. No. 60-1 at 1.  In this motion, plaintiffs argue that defendant has not sufficiently produced required documents.  See generally Dkt. No. 60-1.  Defendant first

asserts "general objections" to plaintiffs' proposed time period and plaintiffs' definition of students.  See Dkt. No. 65-7 at 2-3.

"A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response . . . (b) as ordered by the court."  FED. R. CIV. P. (e)(1)(B).

## A.  Time Period

Defendant objects, generally, to plaintiffs' proposed time period as overbroad. See Dkt. No. 65 at 5.  Defendant presents essentially identical arguments opposing plaintiffs' proposed time period as it presented in opposition to plaintiffs' motion to compel interrogatory responses.  See id. at 6-9.  For the reasons set forth within this Court's analysis of the Motion to Compel responses to plaintiffs' interrogatories, supra, plaintiffs' Motion to Compel production of documents is granted insofar as the relevant time period will be considered August 2015 through August 2021, unless otherwise explained and specified in response to the various demands below.  The Motion to Compel, insofar as it seeks document production beginning in January 2015 is denied.

## B.  Definition of Students

As with its arguments relating to class-wide discovery set forth in its opposition to plaintiffs' motion to compel interrogatory responses, defendant objects to plaintiffs' demands insofar as they seek information relating to "all students" enrolled at RPI.  Dkt. No. 65-7 at 3.  Defendant presents essentially identical arguments against producing class-related discovery or any responsive documents relating to graduate students.

<u>See</u> Dkt. No. 65 at 6-7.  For the reasons this Court set forth in its review of plaintiffs' motion to compel responses to interrogatories, the Court denies defendant's objection to plaintiffs' definition of "students" and attempt at pre-certification discovery.  <u>See supra</u>.  Accordingly, plaintiffs' motion to compel, insofar as it seeks pre-certification class discovery and discovery relating to graduate students is granted, insofar as documents deemed relevant and proportionate to plaintiffs' claims as noted below. Defendant's general objection to class-wide discovery is denied.  <u>See id.</u>

### C. **Specific Document Requests**

At issue in plaintiffs' motion are fifty-three out of seventy-three document requests. The Court addresses these requests below.[13]

#### 1. Tuition: Document Requests 2, 3, 4, 5, 6, 7, 9

#### i.  General Tuition Demands

Plaintiffs first argue that the Court order defendant to respond to document requests 2, 3, 4, 6, and 7.  Request 2 seeks "[a]ll Documents relating to how defendant sets tuition rates."  Dkt. No. 60-1 at 6.  Request 3 seeks "[a]ll Documents relating to how defendant sets tuition rates for each Academic Period during the relevant time period. <u>Id.</u>  Request 4 seeks "[a]ll Documents relating to the budgeting and expenditure of tuition funds for each Academic Period."  <u>Id.</u>  Request 6 seeks "[a]ll Documents relating to how Defendant sets tuition rates for courses administered entirely or partially online." <u>Id.</u>  Request 7 seeks "[a]ll documents relating to how Defendant sets tuition rates for

---

[13] Due to the sheer volume of document requests in dispute and for purposes of judicial economy, to the extent these requests can be addressed as "categories" of requests, they will be addressed in that manner.

courses administered entirely or partially online for each Academic Period during the relevant time period."  Id.

Defendant objected to the tuition-related document requests as vague, overbroad, seeking irrelevant documents and disproportionate to the claims at issue. See Dkt. No. 65-7 at 5.  Defendant indicated that the case at issue is a contractual one, and, as such, its method for determining its tuition rate "has no relation to whether there was a contractual promise for 'live, in-person instruction' or 'an on-degree program'" and that how it determines its tuition rates is not related the question of damages.  Id.

The Court finds that documents relating to how defendants determine tuition are relevant to plaintiffs' argument that defendant was unjustly enriched by refusing to offer tuition refunds when it switched from in-person to online education for the Spring 2020 and Arch 2020 terms.  Thus, information on how defendant budgets for in-person course and online courses – which reasonably may require different expenses – is relevant and reasonably likely to lead to the discovery of relevant evidence.  However, even though the Court agrees with the general time frame of events for student-related information, it finds that applying the 2015-2021 time period to tuition-related and budget documents related to how defendant determines in-person and online tuition to be overbroad and burdensome.  Accordingly, defendant is directed to provide responsive documents for demands 2, 3, 4, 6, and 7, for the 2018-2019, 2019-2020, and 2020-2021 terms.  Information from these three terms would appear more than sufficient to address plaintiffs' discovery demands.  The Court cannot determine, nor have plaintiffs presented a reasonable argument in support, why the methods defendant used to determine its tuition for years prior to 2018 are relevant to its claims, especially

40

where it does not appear likely that there would be significant changes between the 2015-2016 academic year and the 2018-2019 academic year.  Accordingly, plaintiffs' motion to compel is granted insofar as defendant is directed to disclose to plaintiffs documents relevant to demands 2, 3, 4, 6, and 7 for the 2018-2018, 2019-2020, and 2020-2021 terms, including Arch semesters.

### ii. **COVID-Specific Tuition Demands**

Plaintiffs next request the Court compel defendant to produce documents responsive to demands 5 and 9 as such documents relate "to how [RPI] sets its tuition rates as it directly relates to Plaintiffs' claims, damages, and class certification which Plaintiffs have the burden of proof of."  Dkt. No. 60-1 at 8.  Specifically, demand 5 seeks "[a]ll Documents relating to changes to tuition rates Defendant made or considered as following the onset of the COVID-19 Pandemic."  Dkt. No. 65-7 at 6.  Defendant objected to demand 5 because the "request is overly broad, vague, does not seek relevant documents and is not proportionate to the needs of this case.  Changes to tuition rates, if any, made or considered following the transition to remote instruction during the Spring 2020 Term are not relevant to Plaintiffs' claims."  Dkt. No. 65-7 at 6-7.  "Subject to and without waiving its Objection(s)," defendant noted that it did not change tuition rates for the Spring 2020 Term "because instruction continued in students' chosen courses of study taught by the same Pace faculty as taught the course before the transition to remote instruction."  Id. at 7.  "To the extent Plaintiffs seek to determine whether Rensselaer issued any refunds or credits to tuition as a result of the transition to instruction in the Spring 2020 Semester and Arch 2020 Term, [RPI] refers Plaintiffs to its Answer, in which [RPI] states that it did not adjust tuition for the Spring 2020 or Arch

41

2020 Terms because classes continued through remote instruction." Id.  Defendant also identified the 2019-2020 Rensselaer Catalog and financial statements of the named plaintiffs, already overturned, "for information concerning the tuition rates applicable to the Spring 2020 Term." Id.

The Court finds that demand 5 is proper and relevant to plaintiffs' claims insofar as it seeks changes to tuition rates made or considered for the Spring 2020 or Arch 2020 terms.  Insofar as demand 5 contemplates later semesters, the Court agrees that it is overbroad and not proportionate to the needs of the case.  Despite its objection, defendant responded, explaining why it did not make tuition changes for the Spring or Arch 2020 terms.  See Dkt. No. 65-7.  Defendant did not turn over any documents relevant to any changes "considered." Id.  Although it is unclear whether such documents exist, to the extent that there exist any documents relevant to the consideration of tuition changes for the Spring and Arch 2020 terms, such documents are relevant and must be disclosed to plaintiffs.  Accordingly, plaintiffs' motion to compel is granted insofar as defendant is directed to overturn any documents relevant to the consideration of any tuition changes for the Spring and Arch 2020 terms, and if no such documents exist, defendant is to clarify as such in writing to plaintiffs within 30 days of the filing date of this decision.  Insofar as plaintiffs seek documents relating to semesters following the Spring and Arch 2020 terms, this demand is denied as plaintiffs have failed to demonstrate relevance or proportionality to their claims.

Demand 9 seeks "[a]ll documents related to refunds of tuition issued or contemplated as a result of the COVID-19 Pandemic."  Dkt. No. 65-7 at 8.  Defendant objected to demand 9 "because it seeks documents that are not relevant to Plaintiffs'

claims." Dkt. No. 65-7 at 8.  It also referred plaintiff to the documents it identified in response to demand 4.  Id.  In response to demand 4, defendant referred plaintiffs to various "documents concerning [RPI]'s undergraduate cost of attendance recommendations and [RPI]'s budgets for the 2018-2019, 2019-2020, and 2020-2021 fiscal years, which were previously produced[.]" Id. at 6.

Plaintiffs argue that such information is relevant to "'determining the value of its in-person programming' and whether defendant was unjustly enriched by 'keeping the money that plaintiffs paid expecting in-person tuition" as well as to "whether Plaintiffs are entitled to a full or partial refund of tuition and fees as a result of Defendant's non-performance and/or whether Defendant as unjustly enriched." Dkt. No. 60-1.

The Court agrees with plaintiffs.  Information or documentation that could demonstrate considerations that defendant made while assessing whether refunds were appropriate in relation to the move toward remote programming is relevant to plaintiffs' claim that the value of in-person education and online education may not be equivalent, and, thus, whether defendant was unjustly enriched by declining tuition-based refunds for the Spring and Arch 2020 terms.

Defendant has already turned over documents it deemed relevant to demand 9, despite objections.  Although defendant's response indicates that it did not issue tuition refunds, the answer does not address what, if any, documents were considered in making this determination.  However, in response to plaintiffs' motion to compel, defendant provides that it "has conducted a reasonable search and has not located documents concerning discussions about changes to tuition as a result of COVID." Dkt. No. 65 at 13.  Defendant must detail what efforts it took to "search" for responsive

documents when it issued its response to the document demand.  Id.  To the extent

defendant newly discovers documents that are responsive to its consideration or

whether to issue any refunds, partial or otherwise, of tuition for the Spring 2020 or Arch

2020 terms, defendant must produce such documents.  If it is determined, following

further search, that no further documents relating to this demand exist, defendant is

state as such in a supplemental response to plaintiffs.

## 2. Housing & Meal Plan Demands

### i. Housing Demands: 11, 12, 13, 14, 16

Demand 11 seeks "[a]ll Documents relating to how Defendant sets Housing

rates."  Dkt. No. 60-1 at 9.  Demand 12 seeks "[a]ll documents relating to how

Defendant set Housing rates for each Academic Period during the relevant time period.

Id. at 10.  Demand 13 seeks "[a]ll Documents relating to the budgeting and expenditure

of Housing funds for each academic period."  Id.  Demand 14 seeks "[a]ll Documents

relating to changes to Housing rates Defendant made or considered following the onset

of the COVID-19 Pandemic."  Id.  Demand 16 seeks "[a]ll Documents related to refunds

of Housing payments issued or contemplated as a result of the COVID-19 Pandemic."

Id.

Plaintiffs argue that documents responsive to these demands would assist

plaintiffs in determining damages.  See Dkt. No. 60-1 at 10.  More specifically, they

argue that the requests "are relevant to whether the amount of the partial refund given

by Defendant was responsive to 'whether a student signs up for a meal plan or lives on

campus' and whether defendant was unjustly enriched by 'withholding repayment to

plaintiffs for a service that they did not receive." Id.  Plaintiffs seek information as to what services were covered by the housing fees, the services accessible to students during the Spring 2020 and Arch 2020 semesters, "and what the money was spent on[.]" Id. at 11.

Defendant contends that although it objected to these demands as not relevant to plaintiffs' claims, it produced responsive documents insofar as it turned over its academic catalogues for the 2015-2021 academic years, which included the housing rates; the financial account statements for the named plaintiffs, which set forth any housing charges during the students' enrollment at RPI; and its audited consolidated financial statements as of June 30, 2019, and June 30, 2018.  Dkt. No. 65 at 13-14. Defendant states that plaintiffs' motion is not clear as to what additional documents they seek.  See id. at 14.

To the extent defendant issued additional refunds, as this Court has found pre-certification class discovery to be appropriate, such information about the housing-related refunds issued to any undergraduate and graduate students during the Spring 2020 and Arch 2020 terms must be provided to plaintiffs.  Insofar as plaintiffs seek information regarding "how" defendant sets housing rates, generally and during its defined "relevant time period," the Court finds that such information is relevant and proportional insofar as it relates to the time period at issue.  Should such information exist, defendants' methodology for determining charges and how it budgets those charges is relevant and likely to lead to the discovery of evidence relevant to plaintiffs' claim that defendant has been unjustly enriched.  Accordingly, defendant is directed to supplement its response to the extent it can locate any responsive documents

addressing its methods for setting housing rates during the 2018-2019 academic year,

2019-2020 academic year, 2020 Arch term, and 2020-2021 academic year.

As the Court does not have the disclosures before it, it cannot be certain whether

the disclosures thus far have addressed the question of what is "included" in the

housing charges and what housing-related services were available to undergraduate

and graduate students in the Spring 2020 and Arch 2020 terms, defendant is directed to

supplement its disclosure by providing such information.  To the extent that this

information has already been included in the document disclosures, defendant is

directed to supplement its response by directing plaintiffs to the Bates-stamped pages

that are specifically responsive to these questions.  Similarly, to the extent the

disclosures set forth how funds collected for housing for the Spring 2020 and Arch 2020

terms were spent, defendant must direct plaintiffs to the appropriate Bates-stamped

pages of the disclosures.  If this information has not been provided, defendant must

update its disclosure to provide this information.  If defendant is not able to identify this

information through reasonable and diligent efforts, defendant must supplement its

disclosure by explaining the efforts it took and why it is unable to provide specifics about

what the housing fees from the Spring 2020 and Arch 2020 terms were spent on.

### ii.  Meal Plan Demands: 18-20, 21, 23

Demand 18 seeks "[a]ll Documents relating to how Defendant sets Meal Plan

rates."  Dkt. No. 60-1 at 11.  Demand 19 seeks "[a]ll Documents relating to how

Defendant sets Meal Plan rates for each Academic Period during the relevant time

period." Id.  Demand 20 seeks "[a]ll Documents relating to the budgeting and

expenditure of Meal Plan funds for each Academic Period."  Id.  Plaintiffs argue that

these demands are relevant to the question of damages and "whether the amount of the partial refund given by Defendant was responsive to 'whether a student signs up for a meal plan or lives on campus' and whether defendant was unjustly enriched by 'withholding repayment to plaintiffs for a service they did not receive." Id. at 12. Further, plaintiffs argue that it will help the Court and parties "understand what the costs for the meal plans covered," what services "were accessible to students" during the Spring 2020 and Arch 2020 terms, and "what was the money spent on." Dkt. No. 60-1 at 12. Plaintiffs contend that defendant provided only a partial refund for meal plan charges, and, thus, they are "entitled to know what they were paying for and how Defendant budgeted and then actually spent money." Id.

Defendant objected to these demands as irrelevant but produced documents it claims are responsive to the demands, including the academic catalogues from the 2015-2021 academic years, which included meal plan rates and the financial account statements for the named plaintiffs, which stated the meal plan rates charged to those students. See Dkt. No. 65 at 15. Defendant contends that in addressing demands seeking "how" it sets meal plan rates, it provided "documents concerning the determination for the cost of attendance and the budget for the 2018-2021 academic years" and "a budget document that specifically concerns budgeted revenues and expenditures of meal plan payments." Id. For expenditures, defendant "produced its audited consolidated financial statements as of June 30, 2019 and 2019 and as of June 30, 2020 and 2019." Id. at 16. Defendant argues that plaintiffs have not explained "what additional documents they are seeking." Id.

The Court largely agrees with plaintiffs that the document demands related to meal plans are relevant to their claims and the question of damages.  The only clarifications the Court sees necessary are (1) for defendant to provide what meal plan services, intended to be paid for by the meal plan fees, were available to students during the Spring 2020 and Arch 2020 terms; and (2) and details about what the meal plan rates cover, if this information is not already included in the disclosures provided. Beyond this additional supplementation, the Court is also at a loss for what other responsive material plaintiffs believe would address these document demands.  The Court finds it nonproportional to plaintiffs' claims to require defendant to disclose information relating to costs for meal plans, budget for meal plans, and expenditures relating to meal plans for years beyond 2019 through 2021.  Except as where noted, it would appear that defendant has fully and reasonably addressed document demands 18, 19, and 20.

Demand 21 seeks "[a]ll Documents relating to changes to Meal Plan rates Defendant made or considered following the onset of the COVID-19 Pandemic."  Dkt. No. 65-7 at 13.  Demand 23 seeks "[a]ll Documents related to refunds of Meal Plan payments issued or contemplated as a result of the COVID-19 Pandemic."  Id. at 14-15. Plaintiffs argue that these demands seek to reveal "[w]hat services covered by the rates were accessible to students during the Spring 2020 and Arch 2020 semesters" and "what the money was spent on" so that they can "better understand how Defendant valued the meal costs these students were paying for the on-campus food and services they were promised."  Dkt. No. 60-1 at 13.

48

Insofar as it relates to the Covid-specific meal plan document demands, demands 21 and 23, defendant objected, arguing that the demands were "ambiguous and overbroad" as it did not "change' meal plan rates for the Spring 2020 or Arch 2020 Terms." Dkt. No. 65-7 at 14.  Defendant argues that it need not produce meal plan rates relevant to the 2020-2021 academic year as plaintiffs' claims are relevant to the Spring 2020 and Arch 2020 terms.  Id.  Defendant contends that it addressed, in response to interrogatory 7, "the manner in which it provided meal plan credits to students who had purchased meal plans and vacated campus in March of 2020."  Dkt. No. 65 at 16.  Further, it states that it provided financial account statements for all of the named plaintiffs, "the Spring Room and Board Credit Analysis," and other responsive documents which are "sufficient to show Defendant's refund policies or procedures with respect to Meal Plan payments."  Dkt. No. 65-7 at 14.  In its opposition, defendant provides that the "Spring Room and Credit Analysis . . . demonstrate the manner in which housing and meal plan credits that were calculated for each student that was eligible for such refunds and the amount of such credits."  Id.

Although the Court does not have defendant's document disclosures before it, would appear that these documents largely address the relevant document demands 21 and 23 as it relates to defendant's consideration and issuance of refunds.  Although plaintiffs' motion to compel contends that document demands 21 and 23 would help to address what "services covered by the rates were accessible to students during the Spring 2020 and Arch 2020 semesters," the Court concludes that is not a fair reading of Demands 21 and 23 as these demands specifically relate to "changes" made or contemplated to meal plan fees and to refunds connected to COVID-19.  Furthermore,

such information would be encompassed within demands 18, 19, and 20.  Plaintiffs'

document demand does not explain why the disclosures were insufficient or what

remaining documents, if in existence, would be needed to satisfy these demands.

Insofar as plaintiffs seek information relating to the 2020-2021 meal plan rates, the

Court agrees that, specifically to the meal-plan related document demands, plaintiffs

have not addressed how information regarding meal plan rates for the academic year

following the relevant Spring 2020 and Arch 2020 semesters is reasonably likely to lead

to the discovery of relevant evidence.  Accordingly, as the Court finds that defendant

has sufficiently addressed document demands 21 and 23, plaintiffs' motion to compel is

denied with respect to these demands.

### 3.  Student Fee Demands

#### i.  General Student Fee Demands: 25, 26, 27

Demand 25 seeks "[a]ll Documents relating to how Defendant sets Mandatory

Student Fees."  Dkt. No. 65-7 at 15.  Demand 26 seeks "[a]ll Documents relating to how

Defendant set Mandatory Student Fees for each Academic Period during the relevant

time period."  Id.  Demand 27 seeks "[a]ll Documents relating to the budgeting and

expenditure of Mandatory Student Fees for each Academic Period."  Id. at 16.

Defendant objected to demand 25 as overbroad, irrelevant, and unproportionate.

See id. at 15.  Specifically, defendant argued that how it set fees "has no relation to

whether there was a contractual promise for 'live, in-person instruction' or 'an on-degree

program'" or "anything to do with Plaintiffs' alleged damages."  Id. at 15-16.  Regardless,

defendant pointed to documents already produced relating to RPI's undergraduate cost

of attendance and budgets for 2018-2019, 2019-2020, and 2020-2021.  Id. at 16.  Its

response to demand 26 referred to demand 25.  Id.  In response to demand 27, defendant objected to plaintiffs' definition of the relevant time period.  Id. at 16. Defendant referred plaintiffs to already-disclosed documents relating to undergraduate cost of attendance, budgets for 2018-2019, 2019-2020, and 2020-2021, and RPI's "audited consolidated financial statements as of June 20, 2019 and 2018 . . . and as of June 30, 2020 and 2019[.]"  Id. at 16-17.

Plaintiffs argue that demands 25 and 27 relate to the issue of damages, "determining the value of what these fees were intended to cover and whether defendant as unjustly enriched by withholding repayment to plaintiffs for a service they did not receive."  Dkt. No. 60-1 at 13-14.  Plaintiffs again argue that the documents would help them understand what costs the fees covered, what services were accessible to students during the Spring 2020 and Arch 2020 semesters, and what the money from the student activities fees were spent on.  Id. at 14.  In its opposition to the motion to compel, defendant argues that it produced documents responsive to demands 25, 26, and 28.  See Dkt. No. 65 at 17.

The Court agrees with plaintiffs that information relevant to budget setting and expenses relating to the mandatory student fees is relevant to plaintiffs' claims. Accordingly, to the extent defendants have documents explaining the services the mandatory student fees cover, what services covered by the mandatory student fees were available to undergraduate and graduate students during the Spring 2020 and Arch 2020 semesters, and how the money from the mandatory student fees were spent – beyond what has already been produced – then defendant must supplement its disclosures.  Further, to the extent defendant has produced budget documents from

2018-2021 academic years, defendant must supplement with equivalent budgetary documents from the 2015-2017 academic years.  Accordingly, plaintiffs' motion to compel responses to demands 25, 26 and 27 is granted to the extent set forth herein.

### ii.  **COVID-related Student Fee Demands: 28, 30**

Demand 28 seeks "[a]ll Documents relating to changes to Mandatory Student Fees Defendant made or considered following the onset of the COVID-19 Pandemic." Dkt. No. 65-7 at 17.  Demand 30 seeks "[a]ll Documents related to refunds of Mandatory Student Fees issued or contemplated as a result of the COVID-19 Pandemic." Id. at 18. Defendant objected to demand 28 as overbroad, vague, irrelevant, and not proportionate.  Id.  at 17.  Specifically, it contended that "[c]hanges to fee rates, if any, made or considered following the transition to remote instruction during the Spring 2020 Term are not relevant to Plaintiffs' claims."  Id.  As to demand 30, defendant referred to its objection to demand 28.

Plaintiffs argue that the documents are relevant to determining "the value of what these fees were intended to cover and whether defendant was unjustly enriched by withholding repayment to plaintiffs for a service that they did not receive."  Dkt. No. 60-1 at 15.  Further, plaintiffs contend that they should be able to determine what services covered by the rates were accessible to students during the Spring 2020 and Arch 2020 semesters" and "what the money was spent on."  Id.

The Court agrees that information on changes or refunds made or contemplated to student fees is relevant as it relates to the Spring 2020 and Arch 2020 terms. Accordingly, plaintiffs' motion to compel responses to demands 28 and 30 is granted

insofar as defendants must produce any documents relevant to changes made or considered to mandatory student fees for the Spring 2020 and Arch 2020 terms, as well as any documents related to refunds of mandatory student fees made or considered for the Spring 2020 and Arch 2020 terms, both for undergraduate and graduate students. However, the motion is denied insofar as plaintiffs may seek information beyond the Spring 2020 and Arch 2020 terms, as it has not demonstrated that refunds or changes made to mandatory student fees made after the Spring and Arch 2020 terms is relevant to its claims in this case.

### 4.  **Operating Budget Demands: 31-33**

Demand 31 seeks "[d]ocuments sufficient to show Defendant's operating budget, in the aggregate and also broken down by program, department, and course, for each Academic Period beginning in Spring 2015 to the present."  Dkt. No. 65-7 at 18. Demand 32 seeks "[d]ocuments sufficient to show Defendant's actual expenditures, in the aggregate and also broken down by program, department, and of course, for each Academic Period beginning in Spring 2015 to the present."  Id.  Demand 33 seeks "[d]ocuments sufficient to show the funding sources for any of Defendant's actual expenditures for each Academic Period beginning in Spring 2015 to the present."  Id. at 19.

Defendant objected to demand 31 as "overly broad in temporal scope" and because it "seeks information that is not relevant to Plaintiffs' claims."  Dkt. No. 65-7 at 18.  It contends that "[d]iscovery regarding the operating budget, including the detailed breakdowns requested, has nothing to do with whether there was a contract with

Plaintiffs or Plaintiffs' alleged damages." Id.  Defendant objected to demand 32 in a nearly identical fashion to demand 31, referring instead to the "actual expenditures" being irrelevant to plaintiffs' claims and damages.  Id. at 19.  Defendant objected to demand 33 as it did to demands 31 and 32, referring instead to the "operating budget" and "funding sources" as being irrelevant to plaintiffs' claims and damages." Id.

Plaintiffs argue that requests 31-33 relate to the question of damages and "determining the value of what tuition fees were intended to cover and whether defendant was unjustly enriched by withholding repayment to plaintiffs for a service they did not receive."  Dkt. No. 60-1 at 15.  Defendant contends that it is "unclear what additional documents Plaintiffs seek" as it has already produced "its cost of attendance recommendations, budgets and other budget-related documents, including presentations made to the Board of Trustees concerning these annual budgets for the 2018-2019, 2019-2020, and 2020-2021 academic years."  Dkt. No. 65 at 18-20.

The Court agrees that documents related to defendant's operating budget are relevant to plaintiffs' claims and calculation of damages.  However, the Court agrees that is unclear what additional documents or information plaintiffs seek.  The Court does not have the production before it and plaintiffs do not sufficiently specifically identify the defects with the material already disclosed.  However, the Court finds that defendant should disclose information[14] related to the 2015-2016 and 2016-2017 academic years as many of the students who were in the graduating class of 2020 would have been enrolled at RPI during these academic years.  Accordingly, plaintiffs' motion to compel as to demands 31, 32, and 33 is granted in part insofar as defendants should disclose

---

[14]  Providing the annual budgets and "presentations made to the Board of Trustees concerning the annual budgets" for 2015-2016 and 2016-2017 would suffice.

operating budget information related to the 2015-2016 and 2016-2017 academic years and is otherwise denied.

5. **Money Utilization Demands: 38-45**

Demand 38 seeks "[d]ocuments sufficient to identify Defendant's facilities, services, or activities funded, in full or in part, by each of Defendant's Mandatory Student Fees." Dkt. No. 65-7 at 21. Demand 39 seeks

> "[f]or Defendant's facilities, services, or activities funded all or in part by each of Defendant's Mandatory Student Fees, all Documents sufficient to show for each Academic Period: (a) Budgets and actual expenditures beginning in Spring 2017 through the present; (b) Usage or attendance statistics from the beginning of Spring 2017 through the present, (c) Revenue, profit, or loss information from the beginning of Spring 2017 through the present; (d) Electric, water, gas, internet, and other utility costs from the beginning of Spring 2017 through the present; (e) Number of Employees utilized in connection with Defendant's facilities, services, or activities and the hours worked from the beginning of Spring 2017 through the present; and (f) Number of Employees utilized in connection with Defendant's facilities, services, or activities who were terminated or furloughed in whole or in part due to COVID-19 and the total amount of compensation and benefits budgeted versus paid to those Employees.

Id. at 21. Demand 40 seeks, "[d]ocuments sufficient to identify Defendant's facilities, services, or activities funded, in full or in part, by tuition." Id. Demand 41 sought, "[f]or Defendant's facilities, services, or activities funded full or in part by tuition, all Documents sufficient to show for each Academic Period," the same six subparts as identified above for demand 39. Id. at 23. Demand 42 seeks "[d]ocuments sufficient to identify Defendant's facilities, services, or activities funded, in full or in part, by Housing payments." Id. at 24. Demand 43 seeks, "[f]or Defendant's facilities, services, or activities funded in full or part by Housing payments, all Documents sufficient to show for each Academic Period," the same six subparts as identified above for demands 39 and 41. Id. Demand 44 seeks, "[d]ocuments sufficient to identify Defendant's facilities,

services, or activities funded, in full or in part, by Meal Plan payments." Id.  Demand 45

seeks, "[f]or Defendant's facilities, services, or activities funded in full or in part by Meal

Plan payments, all Documents sufficient to show for each Academic Period," the same

six subparts as identified above for demands 39, 41, and 43.  Id. at 26.

Defendant objected to demand 38 as not relevant to plaintiffs' claims but referred

plaintiffs to the Rensselaer Catalogues for academic years 2016-2016, 2016-2107

2017-2018, 2018-2019, and 2019-2020.  See Dkt. No. 65-7 at 20-21.  Defendant

objected to demand 39 as overly broad in temporal scope.  Id. at 21.  Defendant

objected to demands 40, 42, and 44 by stating that these demands seek information not

relevant to plaintiffs' claims as they have 'no relation to whether a contract existed with

Plaintiffs or Plaintiffs' alleged damages."  Id. at 22, 24, 25-26.  Defendant again pointed

to the already-produced Rensselaer Catalogs.  Id. at 22-26.  For demands 39, 41, and

43, defendant objected as "overly broad in temporal scope," to the phrase "'usage or

attendance statistics' contained in subparagraph (b) as ambiguous and not sufficiently

defined," and "overly broad and unduly burdensome in that it demands documents

concerning 'electric, water, gas, internet, and other utility costs' contained in

subparagraph (d) for a five-year time period."  Id. at 21-22, 24, 25.

In their motion to compel, plaintiffs again generally argue that such information

relates to damages and that the documents will assist in understanding "what the tuition

and fees paid by Plaintiffs and members of the Classes covered."  Dkt. No. 60-1 at 16.

They further argue that defendant's assertion that it would produce "the same budget

that they will for requests 31 to 33 and that this 'may provide responsive information' . . .

is entirely insufficient."  Id.

In opposition to the motion to compel, as to demands 38-45, defendant contends that it has produced "audited consolidated financial statements as of June 30, 2019 and 2018 and as of June 30, 2020 and 2019, which show [RPI]'s revenues and expenditures.  [RPI] has also produced its budgets."  Dkt. No. 65 at 19.  Further, defendant argues that plaintiffs "have not indicated why these documents are insufficient to respond to their Requests, or why additional documents are needed."  Id.

For demands 39, 41, and 43, for subparts a, c, and f, plaintiffs' motion to compel is granted as plaintiffs have demonstrated these demands to be relevant and reasonably likely to lead to the discovery of relevant evidence.  To the extent that this information has already been disclosed, defendant may direct plaintiffs to the exact Bates-stamped pages in prior disclosures where the specific information can be located; however, any prior responses must have been fully responsive to these subsections in order to suffice.

For demands 39, 41, and 43, subpart b, the motion to compel is denied.  The Court agrees that this request is ambiguous.  The Court cannot determine what documentation plaintiffs are seeking by asking for "attendance statistics."  Dkt. No. 65-7 at 23.  For demands 39, 41, and 43, subpart d, the Court denies the motion to compel.  Documentation on electric, water, gas, internet, and other utility costs from 2017 to the present is plainly overbroad and overburdensome.  Further, to the extent that defendant has already disclosed, or in response to this motion to compel is required to disclose, general budgetary documents, such documents would likely contain at least some information on the operating expenses associated with such utilities.  The Court sees no reason – nor have plaintiffs proffered any – as to why five years of gas, electric, internet,

water, or other utility bills are reasonably related to their claims or damages.  For

demands 39, 41, and 43 subpart e, the Court denies this request as unduly burdensome

and overbroad.  As this Court has already permitted documentation on employees who

were terminated and furloughed, as well as directed disclosure of overall budgetary

information, plaintiffs have not demonstrated why the hours of essentially every single

RPI employee – indeed, plaintiffs' broad language does not clearly exclude faculty from

this demand – for the past five years is necessary and relevant to their remaining claims

or damages.

Finally, for demand 38, 40, and 42, plaintiffs' motion to compel is granted insofar

as responsive documents exist that have not yet been produced as such documents are

relevant to plaintiffs' claims and reasonably likely to lead to the discovery of relevant

evidence.


### 6.  COVID-19 Response Demands: 46-49

Demand 46 seeks

[a]ll communications exchanged between Defendant and any of the
following relating to (a) Defendant's COVID-19 response, (b) any actual or
contemplated refund of tuition, Mandatory Student Fees, Housing
payments, and Meal Plan payments for the Spring 2020 Academic period
(in part or in full) due to COVID-19, or (c) the actual or contemplated
discount or reduction of tuition, Mandatory Student Fees, Housing
payments, and Meal Play payments for Academic Periods following the
Spring Academic Period due to COVID-19:

i.  Other academic institutions;
ii. Accrediting agencies;
iii. Regulatory authorities;
iv. Government agencies;
vi. Trade groups;
vi. Lobbying firms;
vii. Insurance companies;

viii. Law firms (other than those firm(s) with which Defendant has an attorney/client relationship);
ix. Public relations or media firms;
x. Members of the press;
xi. Defendant's students (with redactions of any details allegedly cloaked from disclosure by FERPA); or
xii. Parents or guardians of Defendant's students.

Dkt. No. 65-7 at 27-28.

Defendant objected to the request 46 as irrelevant to plaintiffs' claims. See Dkt. No. 65-7 at 28. It argued that its "communications with third parties subsequent to the onset of the pandemic do not relate to whether a contract exists with Plaintiffs or Plaintiffs' alleged damages." Id. at 28. Further, defendant objected to the demand as

overbroad and unduly burdensome in that as drafted it demands that the University provide "all" communications exchanged amount essentially all stakeholders in the Rensselaer community concerning the University's response to the pandemic. The documents or communications that may be responsive to this Request and the investigation necessary to ascertain the location and availability of this category of documents renders the Request unduly burdensome and not proportionate to the needs of the case.

Id. Despite its objections, defendant pointed to a website containing "communications to the [RPI] community concerning its response to the pandemic that have been previously produced and are publicly available[.]" Id.

Plaintiffs' motion to compel as it relates to demand 46 is granted insofar as there exist communications between defendant and any of the listed third-party entities regarding defendant's COVID-19 response as it relates to consideration of in-person versus remote learning, whether and to what extent to permit students on campus, and considerations of refunds – whole or part – of tuition, housing payments, meal plan payments, and mandatory student fees for the Spring 2020 and Arch 2020 terms. Plaintiffs' motion to compel as it relates to demand 46 is otherwise denied.

59

Demand 47 seeks

[a]ll internal communications exchanged among Defendant's board
members, trustees, administrators, Employees, agents, faculty, or staff
relating to (a) Defendant's COVID-19 response, (b) the actual or
contemplated refund of tuition, Mandatory student Fees, Housing
payments, and Meal Plan payments for the Spring 2020 Academic Period
(in part or in full) due to COVID-19, or (c) the actual or contemplated
discount or reduction of tuition, Mandatory Student Fees, Housing
payments, and Meal Plan payments for Academic Periods following the
Spring 2020 Academic Period due to COVID-19.

Dkt. No. 65-7 at 29.

Demand 48 seeks "[t]he full minutes (and where available, actual recordings or

transcripts) of any of Defendant's board meetings, department meetings, committee

meetings, conference calls, or other gatherings where the topic of COVID-19 was in any

way mentioned or discussed." Dkt. No. 65-7 at 29. Demand 49 seeks "[a]ll Documents,

including, but not limited to, agendas, notes, memoranda, letters, emails, or

correspondence, relating to any internal or external meetings (whether in person or

virtual), conference calls, or other gatherings concerning Defendant's actual or

anticipated response to COVID-19." Id. at 29-30.

Plaintiffs argue in their motion to compel that these documents are relevant to

plaintiffs' damages. See Dkt. No. 60-1 at 17. More specifically, they contend that

documents related to defendant's "internal or external discussions on whether to refund

monies is plainly relevant to whether Defendant breached a duty (not just whether a

contract was formed)." Id. Plaintiffs note that defendant offered a partial refund on

housing and meal plans, "but not tuition or other fees for on-campus services" and

"offset the partial housing/meal refund based on financial aid." Id. Thus, documents

"related to these actions are relevant per the opinion of the Court."  Id. (citing Dkt. No. 42 at 16, 18).

In opposition to the motion to compel, defendant repeats its argument that the demands are overbroad as it requests "'all' documents that reference the pandemic in any way."  Dkt. No. 65 at 19.  Defendant stated that it did not refund tuition or student fees for Spring 2020, and that despite its objection, it "has conducted a reasonable search for documents concerning refunds of tuition or fees during the Spring 2020 Term or the Arch 2020 and has not located responsive documents."  Id. at 20.  Further, it argues that it "explained in its interrogatory responses and in documents produced and discussed above, the rationale and calculations behind the room and board refunds."  Id.  It argues that plaintiffs have not acknowledged these responses or explain their deficiency.  Id.  As to employee furlough information, defendant objected to its relevance but refers to documents already produced relating to institutional furloughs.  Id. at 20.

Insofar as demand 47(a) seeks "all" internal communications relating to defendant's COVID-19 response, this request is overbroad.  Defendant's COVID-19 response could include a number of considerations that extend far beyond the considerations relevant to plaintiff's claims, i.e., whether to keep in-person learning or switch to remote learning, whether to permit students on campus and to what extent, and whether to issue refunds relating to tuition, housing, meal plans mandatory student fees for the Spring 2020 and Arch 2020 terms.  Insofar as demand 47(c) seeks "actual or contemplated" "discount or reduction" of tuition, payments, or fees for "Academic Periods following the Spring 2020 Academic Period due to COVID-19," the Court finds

61

relevant only such actions as it relates to the Arch 2020 Term.  Plaintiffs have not demonstrated how any COVID-19-related discounts or reductions occurring after Spring 2020 and Arch 2020 terms are relevant to the claims or damages in this action. Accordingly, plaintiffs' motion to compel as it relates to demand 47 is granted insofar as defendant is required to provide internal communications between board members, trustees, administrators, employees, agents, faculty, or staff relating to whether to keep in-person learning or switch to remote learning, whether to permit students on campus and to what extent, and whether to issue refunds relating to tuition, housing, meal plans mandatory student fees for the Spring 2020 and Arch 2020 terms.  Plaintiffs' motion to compel as it relates to demand 47 is otherwise denied.

Demand 48 seeks "[t]he full minutes (and where available, actual recordings or transcripts) of any of Defendant's board meetings, department meetings, committee meetings, conference calls, or other gatherings where the topic of COVID-19 was <u>in any way mentioned or discussed</u>." Dkt. No. 65-7 at 29 (emphasis added).  Similarly, demand 49 requests "all documents" relating to essentially any and all communications regarding defendant's "actual or anticipated response to COVID-19."  <u>Id.</u>  These demands are clearly overbroad and unduly burdensome.  Although communications and documentation regarding defendant's COVID response, such as whether and to what extent to keep in-person versus remote learning, allow students to remain on campus and to what degree, decisions on whether to issue refunds, and decisions on whether to furlough staff and to what extent can be deemed relevant to plaintiffs' claims and damages, requesting "all" communications and documentations wherein COVID-19

and RPI's actual or anticipated response to COVID-19 "was in any way mentioned or discussed" is far beyond a reasonable demand.

As it relates to demands 48 and 49, plaintiffs' motion to compel is granted insofar as defendant is required to produce, if available, transcripts, minutes, or recordings of any board or committee meetings and/or internal communications and documents wherein considerations and/or decisions about how RPI would address COVID-19 for the Spring 2020 and Arch 2020 terms as it relates to in-person versus remote learning, and whether and how refunds of tuition, housing, meal plan, and mandatory student fees would or would not be issued.  Plaintiffs' motion to compel as it relates to demands 48 and 49 is otherwise denied.

### 7.  **Feedback Demands: 50-52**

Demand 50 seeks "[a]ll Documents including, but not limited to, summaries, reports, and spreadsheets relating to students' evaluations of faculty and/or feedback, in any form, for each Academic Period beginning in Spring 2019 and ending in the Arch 2020."  Dkt. No. 65-7 at 30.  Defendant objected to demand 50 as "overly broad in temporal scope" and unrelated to plaintiffs' claims.  Id.  Defendant further provides, "[t]o the extent this Request seeks information concerning the quality of the education received Rensselaer students [sic], such information is relevant only to an educational malpractice claim, which is not cognizable under New York law."  Id.  Defendant then referred plaintiffs to a range of Bates-stamped documents.  Id.

Plaintiffs argue that documents relating to "internal or external discussions on whether to refund monies is plainly relevant to whether Defendant breached a duty (not just whether a contract was formed.")  DKt. No. 60-1 at 19.  Plaintiffs point to this

Court's statement that "[w]itholding repayment to plaintiffs for a service that they did not receive because of an entirely unrelated consideration could plausibly violate that duty [of good faith and fair dealing], and thus plaintiffs' claims must survive for now."  Id.

Beyond its relevance objections, in opposition to the motion to compel, defendant provides that it conducted a "reasonable search for documents concerning refunds of tuition or fees during the Spring 2020 Term or the Arch 2020 and has not located any responsive documents."  Dkt. No. 65 at 20.

The Court finds that documents student evaluations and/or feedback relating to faculty are not relevant to plaintiffs' claims or damages.  Moreover, if RPI considered student satisfaction or dissatisfaction with faculty when assessing whether to provide tuition refunds for the Spring 2020 and Arch 2020 terms, it would fall within the demands that seek communications and considerations of whether to issue tuition payments.  Plaintiffs fail to show the necessity of all student feedback of faculty during the Spring 2019 to Arch 2020 semesters.  Accordingly, plaintiffs' motion to compel as it relates to demand 50 is denied.

Demand 51 seeks

> [a]ll Documents relating to any complaint, concern, or other statement (written or verbal) about COVID-19, its effects, or consequences, sent to Defendant by; a. Other academic institutions; b. Defendant's administrators; c. Defendant's faculty; d. Defendant's staff; e. Defendant's students (with redactions of any details allegedly cloaked from disclosure by FERPA); f. Parents or guardians of Defendant's students; g. Government agencies; h. The Press, and i. The public.

Dkt. No. 67-5 at 31.  Defendant objected to demand 51 as irrelevant to plaintiffs' claims and unduly burdensome.  Id.  As with demand 50, plaintiffs argue that documents

related to "internal or external discussions on whether to refund moneys is plainly relevant to whether Defendant breached a duty." Dkt. No. 60-1 at 18.

The Court agrees that plaintiffs' demand 51 is overbroad and unduly burdensome. It seeks any "complaint, concern, or other statement" "about COVID-19, its effects, or consequences" from a large range of sources. Dkt. No. 67-5 at 31. As worded, the response to this demand necessarily would include topics that reach far beyond those claims remaining in plaintiffs' consolidated amended complaint and relevant to the consideration of damages, including beyond RPI's handling of COVID-19 related-closures and refunds. Accordingly, plaintiffs' motion to compel as it relates to demand 51 is granted to the limited extent that defendant will be required to produce communications from the above sources if it can be determined that any such communications played a role in defendant's assessment to proceed with in-person versus remote learning or issue refunds, in whole or in part, for tuition, housing, meal plans, and mandatory student fees for the Spring 2020 and Arch 2020 terms. Plaintiffs' motion to compel is otherwise denied.

Demand 52 seeks "[a]ll responses by Defendant to any of the complaint, concern, or other statement that is the subject of the immediately preceding request." Dkt. No. 65-7 at 31. Defendant objected, arguing it is not relevant to plaintiffs' claims and it is unduly burdensome. Id. It pointed plaintiffs to "the communications of the New York State Department of Education concerning the transition to remote instruction of as the result of the pandemic" already overturned. Id. The Court finds that plaintiffs have not demonstrated that defendant's response to complaints is reasonably related to their claims or likely to lead to the discovery of relevant evidence. Plaintiffs have not

shown how defendant's responses to complaints are relevant to its claims, as opposed

to the actual actions defendants considered and took in response to deciding whether to

remain in-person or go remote and to refund tuition, housing fees, meal fees, and

mandatory student fees for the Spring 2020 and Arch 2020 semesters, which have been

or will be provided in response to other document demands.  Accordingly, plaintiffs'

motion to compel as it relates to demand 52 is denied.


### 8. **Marketing/Contract Demands: 53-65**

Demand 53 seeks "[d]ocuments sufficient to show all iterations of marketing

materials, including, but not limited to, catalogues, admissions handbooks, emails,

brochures, videos, correspondence, or presentations, used by Defendant to market

itself in any way to either prospective or current students, their parents, or members of

the public during the relevant time period."  Dkt. No. 65-7 at 32.  Defendants objected to

the definition of relevant time period and the relevance of the requested documents to

plaintiffs' claims.  Id.  However, defendant directed plaintiffs to certain marketing,

admission, and recruitment materials.  Id.

Plaintiffs argue that defendant improperly limited its response to undergraduate

students.  Dkt. No. 60-1 at 18.  Defendant argues again that undergraduate students

"enroll at [RPI] on different terms than students enrolling in master's degree or Ph.D

programs."  Dkt. No. 65 at 21.  As this Court has already determined that it is

reasonable to include graduate students in the definition of students at this stage, the

Court finds that marketing materials relevant to graduate students is appropriate and

relevant to plaintiffs' claims.  Accordingly, plaintiffs' motion to compel as it relates to

demand 53 is granted insofar as defendants will be required to produce marketing materials used to market its educational programs to prospective graduate students from the 2018-2019, and 2019-2020 academic years and Arch 2020 term.  Plaintiffs' motion to compel as it relates to demand 53 is otherwise denied.

Demand 54 seeks "[a]ll documents relating to any express contract between Plaintiffs and Defendant."  Dkt No. 65-7 at 32.  Defendant objected to the relevant time period, argued that "it requires legal analysis or conclusions," involves "a question of law for the Court," and seeks documents not relevant to plaintiffs' claims.  Dkt. No. 65-7 at 32-33.  Defendant then referred plaintiffs to various documents already produced.  Id. at 33.  Demand 55 seeks "[d]ocuments sufficient to show any form contracts and forms for the enrollment, registration, or course selection of any students in any of Defendant's academic programs for any Academic Period during the relevant time period."  Id. at 34.  Defendant objected to plaintiffs' definitions of relevant time period and students, and argues that the demand is ambiguous because "'form contract' is not sufficiently defined."  Id. at 33-34.  Demand 55 sought "[e]xemplars of any Documents thar reference the existence of any agreement or contractual agreement between Defendant and any student, including Plaintiff."  Id. at 33.  Defendant objected, referring to its objection to request 54.  Id.  Demand 56 sought "[d]ocuments sufficient to show any form contracts and forms for the enrollment, registration, or course selection of students in any of Defendant's academic programs for any Academic Period during the relevant time period."  Id.  Defendant referred to its objection to demand 54.  Id. at 33-34.

Plaintiffs' motion to compel, although it references demands 53 through 65 in its heading, does not address any interrogatories of the interrogatories relating to

contracts, and merely states, collectively referring to demands 53 through 65, that defendant improperly limited its responses to undergraduates.  See Dkt. No. 60-1 at 18. Indeed, the section addressing these interrogatories refers only to "marketing requests." The Court finds that plaintiffs failed to demonstrate that defendant's objections to interrogatories 55-56 relating to contracts were improper.

Demand 57 seeks "[d]ocuments sufficient to show the standard admissions package sent to the admitted students during the relevant time period."  Dkt. No. 65-7 at 34.  Defendant objected to the definitions of relevant time period and students and as ambiguous because "standards admission packet" was not sufficiently defined.  Id.

The Court finds, for the reasons already stated above that including graduate students in the definition of students, at this time, is proper, and that requiring information from academic years 2015-2016, 2016-2017, 2018-2018, 2018-2019, 2019-2020 is proper.  Accordingly, plaintiffs' motion to compel as it relates to demand 57 is granted insofar as it seeks the admissions information and paperwork sent to students who applied to, and were accepted into, RPI undergraduate and graduate programs from the following academic years: 2015-2016, 2016-2017, 2018-2018, 2018-2019, 2019-2020.

Demand 58 seeks "[w]ebpages for Defendant's current website and all prior versions during the relevant time period."  Dkt. No. 65-7 at 34.  Defendant objected to the relevant time period, definition of students, and argued that the request was not relevant to plaintiffs' claims and was overbroad and unduly burdensome.  Id.  Defendant argues that the information is also "publicly available and equally accessible to Plaintiffs."  Id.  As discussed above, plaintiffs do not identify deficiencies with

defendants' response to this interrogatory beyond generally indicating that its response was insufficient as it relates to graduate students.  Although the Court agrees that RPI need not turn over the current version of its website, as plaintiffs can easily access the website, addressing the earlier versions of the is more complex.  It would appear that there would have been several versions of RPI's website, and its numerous pages, throughout the requested academic years.  Indeed, the Court is unaware what steps would be involved in producing every single version of every single page available on defendant's website from 2015 to 2020 or if such production would even be possible.  Regardless, plaintiffs have not demonstrated why every page and every version of RPI's website from 2015 to the present is relevant and reasonably proportionate to their claims and damages.  Further, plaintiffs have provided no reasonable parameters to this request.  Accordingly, the Court finds that defendants are to supplement its response by providing copies of one version of the undergraduate admissions page for graduate admissions page that were available on RPI's website from 2015 to 2020.  If, upon a reasonable search, defendant is unable to obtain such information for some or any of the above years, defendant is to supplement its response by informing plaintiffs of the efforts it took to obtain this information and why it was unavailable to them through reasonable efforts.

Demand 59 seeks "[a]ll of Defendant's social media account posts relating to COVID-19, including retweets and comments posted in Your posts."  Dkt. No. 65-7 at 35.  Although the Court agrees that defendant's social media response insofar as it communicated decisions or thoughts related to its decision to move to remote learning; allow or disallow students on campus; or issue or not issue refunds for tuition, housing,

meal plans, and mandatory student fees may be relevant to plaintiffs' claims, its request is overbroad.  Plaintiffs seek "all" social media posts relating to COVID-19, which necessarily would include posts that have no relation to the claims in this case.  Further, plaintiffs have not demonstrated the relevance of comments and retweets of defendant's social media posts, actions which are not taken by defendant but by third parties.  Accordingly, plaintiffs' motion to compel as it relates to demand 59 is granted insofar as defendants will be required to turn over all social media posts issued by RPI related to defendant's decisions or thoughts related to its decision to move to remote learning; allow students on campus; or issue or not issue refunds for tuition, housing, meal plans, and mandatory student fees for the Spring 2020 and Arch 2020 terms as it relates to undergraduate and graduate students.  Plaintiffs' motion to compel as it relates to demand 59 is otherwise denied.

Demand 60 seeks "[s]amples of all Defendant's written recruitment and solicitation or advertising materials sent to prospective students during the relevant time period that relates to the benefits of an on-campus education, in-person instruction, tuition rates, Mandatory Student Fees, Housing, and Meal Plans."  Dkt. No. 65-7 at 35. Demand 61 seeks, "[s]amples of all of Defendant's written recruitment and solicitation or advertising materials sent to prospective students during the relevant time period that relates to online programs or classes."  Id. at 36.  Defendant referred to its objection to demand 53.  Id.  For demand 53, defendant objected to the relevant time period and definition of students.  See id. at 32.  Finally, defendant argues that the named plaintiffs were not enrolled in online programming "either at the time of their enrollment or during the Spring 2020 Term."  Id.

As stated, plaintiffs' motion to compel addresses only defendant's lack of response for graduate students.  See Dkt. No. 60-1 at 18.  As the Court has already determined that it is appropriate to include graduate students in the class definition at this stage, plaintiffs' motion to compel is granted insofar as it seeks recruitment material for the above topics sent to prospective graduate students.  Given that graduate students generally do not enroll in a four-year degree program, and, as such, graduate students attending RPI in the Spring and Arch 2020 terms were unlikely to have been enrolled at RPI as graduate students earlier than 2018, it is reasonable to narrow this request to the 2018-2019 and 2019-2020 academic terms.  Plaintiffs' motion to compel as it relates to demand 60 is otherwise denied.  As for demand 61, as this Court has concluded that pre-certification class discovery is appropriate, defendant is directed to provide any such recruitment or advertising materials as it relates to online programs for prospective undergraduate students for the 2015-2016, 2016-2017, 2017-2018, 2018-2019, and 2019-2020 academic years, and to prospective graduate students for the 2018-2019 and 2019-2020 academic years.

Demand 62 seeks "[a]ll Documents relating to any presentations, PowerPoints, or speeches given at any college/university fair or recruitment event by or on Defendant's behalf during the relevant time period relating to the benefits of an on-campus education, in-person instruction, tuition rates, Mandatory Student Fees, Housing, or Meal Plans."  Dkt. No. 65-7 at 36.  Defendant referred to its objection to demand 61.  Id.  Demand 63 similarly seeks "[a]ll Documents relating to any presentations, PowerPoints, or speeches given at any college/university fair or recruitment event by or on Defendant's behalf during the relevant time period relating to

online programs or online classes." Id.  Demand 64 seeks "[a]ll Documents relating to any presentations, PowerPoints, or speeches given at any orientation or admitted student event during the relevant time period relating the benefits of an on-campus education, in-person instruction, tuition rates, Mandatory Student Fees, Housing, or Meal Plan policies." Id.  Demand 65 seeks "[a]ll Documents relating to any presentations, PowerPoints, or speeches given at any orientation or admitted student event by or on Defendant's behalf during the relevant time period relating to online programs or online classes." Id. at 37.

As with all requests between 53-65, plaintiffs do not address deficiencies in the responses beyond noting that defendant did not provide information relevant to graduate students.  Plaintiffs' motion to compel responses to demands 62, 63, 64, and 65 is granted to the limited extent that if defendant can locate presentations, Power Points, or speeches relevant to prospective and accepted graduate students relating to "the benefits of an on-campus education, in-person instruction, tuition rates, Mandatory Student Fees, Housing, or Meal Plans" or "online programs or online classes" from the years 2015-2020, it is directed to provide such information to plaintiffs.  If defendant cannot locate such information through reasonable efforts, it should inform plaintiffs as such in writing within 30 days from the filing date of this Decision.  Plaintiffs' motion to compel as it relates to demands 62, 63, 64, and 65 is otherwise denied.

### 9. **Refund Policies/Actions Demands: 66-67**

Demand 66 seeks "[a]ll Documents relating to Communications between students (and/or guardians of students) and Defendant concerning a request for refund

of tuition, Mandatory Student Fees, Housing costs, or Meal Plan payments relating to COVID-19."  Dkt. No. 65-7 at 37.  Defendant objected, arguing that "it seeks documents and communications that are not relevant to Plaintiffs' claims.  The request does not relate to whether a contract existed with Plaintiffs." Id.   It reiterated that it did not issue tuition refunds because "classes continued through remote instruction," and directed plaintiffs to previously-disclosed financial account statements of plaintiffs, the Spring Room and Board Credit Analysis, and a range of Bates-stamped pages.  Id.

In their motion to compel, addressing demand 66, plaintiffs argue that defendant "improperly limits its responses to these Requests to only the named Plaintiffs[,] and generally argues that [a]ny documents related to RPI's internal or external discussions on whether to refund monies is plainly relevant to whether RPI breached a duty (not just whether a contract was formed)."  Dkt. No. 60-1 at 19.  Defendant does not address demands 66 or 67 in its opposition to plaintiffs' motion to compel.  Dkt. No. 65 at 21.

The Court finds that communications between students or their parents and RPI about requests for refunds is not relevant to plaintiffs' claims, especially where defendant has indicated that it did not issue any tuition refunds and already produced documents showing its rationale for refunding room and board credits.  Accordingly, plaintiffs' motion to compel with respect to demand 66 is denied.

Demand 67 seeks "[a]ll Documents sufficient to show any refunds, credits, or other monetary adjustments made for tuition, Mandatory Student Fees, Housing payments, or Meal Plan payments issued to any students for each Academic Period from Spring 2020 through the present."  Dkt. No. 65-7 at 38.  For demand 67, defendant referred plaintiffs to its objection to demand 66.  In its motion to compel, plaintiffs

collectively refer to demands 66 and 67, stating, as set forth above, that defendant improperly attempts to limit plaintiffs' claims to named plaintiffs.  Dkt. No. 60-1 at 19.

Unlike demand 66, which sought communications regarding *requests* for refunds, demand 67 seeks actual issuance of refunds.  The Court finds such information relevant to plaintiffs' claims as such information may reveal.  Defendant has stated that it did not issue any tuition refunds.  Accordingly, unless further research reveals otherwise, defendant's response to this portion of demand 67 suffices.  However, to the extent not otherwise produced, defendant is directed to supplement its response by providing documentation of any refunds, in whole or in part, issued to any undergraduate or graduate students with respect to meal plans, housing fees, and mandatory student fees in connection with COVID-19 closures for the Spring 2020 and Arch 2020 terms. Defendant may redact the names of the students in its response.

### 10. **Handbooks, Catalogues, and Schedules Demands: 68-71**

Demand 68 seeks "[e]ach of Defendant's student handbook(s) published during the relevant time period."  Dkt. No. 65-7 at 38.  Defendant generally objected to plaintiffs' definitions of students and relevant time period, referring plaintiffs to the previously produced 2019-2020 student handbook, a website containing prior versions of the student handbook, and the Bates-stamped pages of copies of earlier versions already produced.  Id.  Plaintiffs generally argue that defendant improperly limits its response to named plaintiffs and improperly limits the relevant time period.  Dkt. No. 60-1 at 19.  However, plaintiffs fully fail to address whether the prior disclosure provided plaintiffs access to student handbooks for academic years 2015-2016, 2016-2017, 2017-2018, 2018-2019, and 2019-2020.  When the Court visited the provided weblink, it

appears that the provided website lists copies of the student handbook as far back as 2014.  Accordingly, it would appear that plaintiffs have been provided with all requested documents responsive to this demand.  Accordingly, as plaintiffs have identified no deficiency with the responsive documents provided, plaintiffs' motion to compel with respect to demand 68 is denied.

Demand 69 seeks "[e]ach of Defendant's academic, course, department, and program catalogues published during the relevant time period."  Dkt. No. 65-7 at 38. Defendant objected to the definition of the relevant time period, but referred plaintiffs to the Rensselaer Catalogues for years 2015-2021.  Dkt. No. 65-7 at 39.  As plaintiffs do not identify the deficiency in this response or identify any other catalogues that it seeks that defendant did not overturn, plaintiffs' motion to compel with respect to demand 69 is denied.

Demand 70 seeks "[s]amples of Defendant's course schedule forms, course selection forms, and room assignments published or applicable during the registration/enrollment periods for the relevant time period."  Dkt. No. 65-7 at 39. Defendant objected to the definition of relevant time period and because the demand sought documents not relevant to plaintiffs' claims.  Id.  Defendant produced "course-related syllabi" for named plaintiffs and noted that it "is continuing its search for course-related documents pertaining to the Named Plaintiffs and will produce any such documents located after that reasonable search."  Id.  As part of their general response to requests 68 through 71, plaintiffs argue that defendant improperly limits its response to the named plaintiffs and improperly limits the time period.  Id.

As defendant has already provided course catalogues, which presumably list the available courses for each semester, the Court cannot see why information regarding room assignments, "course schedule forms," or course selection or registration forms for courses is at all relevant to any of plaintiffs' claims. Accordingly, plaintiffs' motion to compel is denied with respect to demand 70.

Demand 71 seeks" [a]ll Documents that refer or relate to any studies, reports, focus groups, surveys, publications, or articles that reference or compared the efficacy of online education versus in-person education during the relevant time period." Dkt. No. 65-7 at 39. Defendant objected to the definition of relevant time period and argued it sought documents not relevant to plaintiffs' claims. Id. However, defendant provided that it conducted a "reasonable search" and has not located any responsive documents. Id. Plaintiffs' only means of addressing this demand is to collectively argue that defendant improperly limited its response to named plaintiffs and improperly attempts to limit the relevant time period. See Dkt. No. 60-1 at 19. Defendant does not specifically address demand 71 beyond stating that it has produced student handbooks. Id. at 22-23.

The Court finds that any studies, reports, or focus groups *commissioned* by RPI, or any publications or surveys that RPI or affiliates of RPI issued relating to online education or the value of online versus in-person education, are relevant to plaintiffs' claims. However, the Court does not find relevant to plaintiffs' claims any studies, reports, focus groups, articles, or surveys from third-party sources not commissioned by or otherwise connected with RPI would be relevant to such claims. Defendant responded in its initial objections, contending that it did not find any relevant responsive

documents.  See Dkt. No. 65-7.  The Court finds defendant's objection sufficient to conclude that no such responsive documents exist.  Accordingly, plaintiffs' motion to compel with respect to demand 71 is denied.

11. **Fall 2020 Re-entry Plan Demands: 72-73**

Demand 72 seeks, "[a]ll internal communications exchanged between Defendant's board members, trustees, administrators, Employees, agents, faculty, or staff regarding online or on-campus classes, Mandatory Student Fees, Housing, or Meal Plans during the Fall 2020 Academic Period related to COVID-19."  Dkt. No. 65-7 at 40. Demand 73 seeks "[a]ll communications exchanged among Defendant's board members, trustees, administrators, Employees, agents, faculty, or staff regarding online or on-campus classes, Mandatory Student Fees, Housing, or Meal Plans during the Fall 2020 Academic Period related to COVID-19."  Id.

Defendant objected, arguing that demands 72 and 73 sought "documents that are not relevant to Plaintiffs' claims.  Plaintiff [sic] alleges a breach of contract related to the Spring 2020 Term, and documents related to the Fall 2020 Term are not related to those claims."  Id. at 40.  In its motion to compel with respect to demands 72 and 73, plaintiffs state that defendant "completely ignores Plaintiffs' request to produce documents and only produces its re-entry plan for the Fall 2020 semester."  Dkt. No. 60-1 at 19.  Plaintiffs argue that "[a]ny documents related to Defendant's internal or external discussions on whether to refund monies or reduce tuition is plainly relevant to whether Defendant breached a duty (not just whether a contract was formed)."  Id. at 20.  Plaintiffs argue that "documents in relation to its Fall 2020 semester . . . directly

relate to Plaintiffs' claims, damages, and class certification which Plaintiffs have the burden of proof of."  Id.

In opposition to the motion to compel, defendant responds that plaintiffs' claims relate to the Spring 2020 and Arch 2020 terms and that they raise no allegations regarding the Fall 2020 term.  See Dkt. No. 65 at 22.  In response to plaintiffs' argument that the documents "are somehow relevant as to whether [RPI] 'breached a duty,'" defendant contends that this argument is "nonsensical" as "there is no negligence claim in this case, and whether [RPI] 'breached a duty' is not relevant to any of Plaintiffs' claims."  Id.  Further, defendant argues that documents relating to "the return [t]o campus in the Fall of 2020, after the events giving rise to Plaintiffs' allegations, cannot establish whether there was a promise to provide in-person instruction before the pandemic."  Id.

The Court agrees with defendant that demands 72 and 73 have no relevance to plaintiffs' claims or damages.  Plaintiffs' claims relate to the Spring 2020 and Arch 2020 terms, and make no claims as to the Fall 2020 term.  As plaintiffs have fully failed to present any reasonable argument as to why communications, "internal" or otherwise, relating to online or on-campus classes or fees among the various individuals or groups referenced relating to Fall 2020 have relevance to their claims about the Spring 2020 and Arch 2020 terms, their requests are irrelevant, overbroad, and unduly burdensome, and, accordingly, are denied.

### III.  **Conclusion**

Wherefore, for the reasons set forth above, it is hereby

**ORDERED**, that plaintiffs' motion to compel interrogatory responses, dkt. no. 57, is **GRANTED IN PART AND DENIED IN PART**, as set forth herein; and it is further

**ORDERED**, that plaintiffs' motion to compel documents, dkt. no. 60, is **GRANTED IN PART AND DENIED IN PART**, as set forth herein; and it is further

**ORDERED,** that defendant will supplement its interrogatory and document demands within **sixty (60) days** of the filing date of this Memorandum-Decision & Order, as set forth herein; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 10, 2022
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge